574 A.2d 398

JAMIE DERRICOTT SCAFIDI AND ANTHONY SCAFIDI, INDIVID-
UALLY AS ADMINISTRATORS AD PROSEQUENDUM AND
GENERAL ADMINISTRATORS FOR THE ESTATE OF DAN-
IELLE SCAFIDI, DECEASED, PLAINTIFFS–RESPONDENTS, v.
F.U. SEILER, M.D., DEFENDANT–APPELLANT.

Argued October 11, 1989—Decided May 24, 1990.

94

*Richard A. Grossman* argued the cause for appellant (*Grossman & Kruttschnitt,* attorneys; *Richard A. Grossman* and *Thomas J. Heavey,* on the brief).

*Benjamin N. Cittadino* argued the cause for respondents (*Pellettieri, Rabstein and Altman,* and *Devlin, Cittadino & Shaw,* attorneys).

*Joan Bannan Lorio* submitted a brief on behalf of *amicus curiae,* New Jersey Medical Malpractice Reinsurance Association (*Francis & Berry,* attorneys; *Hugh P. Francis,* of counsel; *Joan Bannan Lorio* and *Sean P. Buckley,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

In this medical malpractice case, the proofs presented as a factual issue whether the defendant's failure properly to treat and arrest Jamie Scafidi's early labor proximately caused the premature birth and death of her infant child. The trial court declined plaintiffs' request that it instruct the jury on causation in accordance with the "increased risk" standard authorized by our opinion in *Evers v. Dollinger,* 95 *N.J.* 399, 417, 471 *A.*2d 405 (1984). The court also refused to instruct the jury that it was

defendant's burden to prove that damages could be apportioned to reflect the likelihood that plaintiff Jamie Scafidi's preexistent condition was independently responsible for the premature birth and death. *See Fosgate v. Corona,* 66 *N.J.* 268, 272–73, 330 *A.*2d 355 (1974). Although finding that defendant's conduct was negligent, the jury returned a verdict for defendant, determining that his negligence was not a proximate cause of the infant's premature birth and death.

The Appellate Division held that the trial court committed reversible error by refusing to give the jury an *Evers v. Dollinger* charge, 225 *N.J.Super.* 576, 582, 543 *A.*2d 95 (1988), but sustained the trial court's refusal to impose on defendant the burden of proving that damages could be apportioned. *Id.* at 584, 543 *A.*2d 95. We granted certification, 114 *N.J.* 471, 555 *A.*2d 599 (1989), and now affirm the judgment of the Appellate Division. We hold, however, that any damages awarded to plaintiffs on retrial, assuming that defendant's proofs include evidence that the infant's premature birth and death might have occurred even if defendant's treatment had been proper, should be apportioned to reflect the likelihood that the premature birth and death would have been avoided by proper treatment. Thus, plaintiffs' damages will be limited to the value of the lost chance for recovery attributable to defendant's negligence.

## I.

In July 1982, plaintiff Jamie Scafidi began the seventh month of a difficult pregnancy. On July 7th, she saw her regular obstetrician, Dr. Franzoni, because of severe bleeding that had started that morning. Dr. Franzoni warned that she "was sitting on a time bomb and * * * [was] threatening abortion." He prescribed bed-rest and instructed her to call if any problems developed.

That afternoon she experienced intermittent abdominal cramps and attempted to communicate with Dr. Franzoni. Be-

tween 5:00 and 6:00 p.m., Dr. Seiler, an associate who was covering for Dr. Franzoni, returned the call. She explained her symptoms to Dr. Seiler and also repeated Dr. Franzoni's admonition to her that morning. In response to Dr. Seiler's inquiries, she said that her bleeding had stopped, that the cramps were irregular, and that her next scheduled appointment with Dr. Franzoni was the following day. Dr. Seiler informed Ms. Scafidi that he would order a medication called vasodilian to "calm" the uterus, and told her to call back if the cramping intensified. Dr. Seiler neither examined Ms. Scafidi nor consulted with Dr. Franzoni.

Ms. Scafidi took three of the vasodilian pills during the night, but the cramping continued. Dr. Franzoni examined her the following morning, observing that her cervix was dilated three centimeters. He hospitalized her immediately and began tocolytic therapy, a means of arresting premature labor, using a solution of magnesium sulfate administered intravenously. The medication was unsuccessful. Later that day Ms. Scafidi gave birth to a twenty-eight-week gestated infant girl, weighing two pounds, six ounces. After two days of intensive care, the baby died of respiratory failure on July 10, 1982.

Plaintiffs instituted this action seeking damages for pain and suffering and wrongful death on behalf of the deceased infant, and individually for loss of services. Plaintiffs alleged that Dr. Seiler failed to examine, diagnose, and administer proper medication to Ms. Scafidi, resulting in the premature birth and death of her infant daughter. At trial Dr. Marshall Klavan, plaintiffs' expert witness, testified that vasodilian administered orally was virtually valueless as a tocolytic agent. He stated that Dr. Seiler's failure to have examined and hospitalized Ms. Scafidi and institute proper tocolytic therapy deviated from accepted standards and "directly related to the premature birth." According to Dr. Klavan, timely administration of tocolytic therapy was seventy-five- to eighty-percent effective in arresting premature labor. Dr. Klavan asserted that "the

sooner you give tocolytic, the greater likelihood you would abort the labor."

Dr. Richard Berman, defendant's expert, testified that Dr. Seiler's treatment was consistent with accepted standards. He stated that the outcome would not have been different even had tocolytic therapy begun after Ms. Scafidi spoke with defendant. He expressed the view that only twenty-five percent of patients receiving tocolytic therapy respond to it, and he could not determine whether it would have helped Ms. Scafidi. Acknowledging agreement with the concept that delay in initiating tocolytic therapy increases the risk of premature birth, Dr. Berman explained that the "biggest problem" is in determining whether to begin the treatment. However, he agreed that "retrospectively, the sooner it had been started, the better it would have been for her."

Plaintiffs requested a jury instruction on causation that was consistent with this Court's opinion in *Evers v. Dollinger, supra*, 95 *N.J.* at 417, 471 *A.*2d 405. The requested charge was:

> Once the plaintiffs in this case have produced evidence of a negligent act or failure to act which increased the risk that plaintiffs' child would be born prematurely and thereafter die of the complications of that premature birth, and that the premature birth and consequent death of the child in fact occurred, you will then consider whether such increased risk was a substantial factor in that result. If you so find, you will proceed to a calculation of damages.

The trial court denied the request, and instead gave the following instruction on causation:

> The plaintiff has the burden of proving that the injuries for which he seeks to be compensated were proximately caused by the accident in question.
>
> Now, I've used the term proximate cause. By proximate cause, we mean that the negligence of a particular party was a subsequent [sic] cause of the injury. That is, a cause which necessarily set the other causes in motion and was a substantial factor in bringing the injury complained of. It is a cause which naturally and probably led to, and might have been suspected to produce the injury complained of.

In addition, plaintiffs requested a jury instruction on damages based on *Fosgate v. Corona, supra*, 66 *N.J.* at 272–73, 330 *A.*2d 355. The requested charge stated that the defendant's

liability, if found by the jury, would include all damages incurred by plaintiffs unless defendant sustained the burden of proving that the damages could be apportioned between those attributable to plaintiff Jamie Scafidi's preexistent condition and those attributable to defendant's negligence. In effect, the requested charge imposed on defendant "the burden of segregating recoverable damages from those solely incident to the preexisting disease." *Id.* at 273, 330 *A.*2d 355. The trial court denied the request, instructing the jury generally with respect to the distinction between the damages claimed for the decedent's pain and suffering, and the damages sought by plaintiffs individually for loss of services and companionship. However, unlike the trial court in *Fosgate, supra,* 66 *N.J.* at 272–73, 330 *A.*2d 355, the trial court here did not charge the jury that defendant had no liability for damages attributable to Ms. Scafidi's preexistent condition. The import of the trial court's instruction was that if the jury found defendant's negligence to be a proximate cause of the infant's premature birth and death, defendant would be liable for all damages sustained by plaintiffs, presumably a more favorable instruction for plaintiffs than the one requested.

The jury determined that defendant was negligent, but found that defendant's negligence was not the proximate cause of the infant's premature birth and death. The Appellate Division reversed, holding that the traditional proximate-cause charge was an inappropriate standard for determining causation, and that the "increased risk" charge authorized by *Evers* should have been given to the jury:

> We hold that the flexible *Evers* standard applies to all medical malpractice cases in which there is evidence that defendant's negligence increased the risk of the occurrence of the ultimate eventuating harm by failing to arrest plaintiff's downward medical course. In such cases, it is a jury question whether the increased risk resulting from defendant's negligence was a substantial factor in producing the ultimate harm. The rule applies even if plaintiff's case includes evidence which would satisfy a higher standard. [225 *N.J.Super.* at 582, 543 *A.*2d 95.]

The Appellate Division sustained the trial court's refusal to charge the jury on damages in accordance with *Fosgate*. *Id.* at 584, 543 *A*.2d 95.

## II.

■ To recover damages for the negligence of another, a plaintiff must prove that the negligence was a proximate cause of the injury sustained. *See, e.g., People Express Airlines, Inc. v. Consolidated Rail Corp.*, 100 *N.J.* 246, 264, 495 *A*.2d 107 (1985). It is perhaps an understatement to acknowledge that causation "is an inscrutably vague notion, susceptible to endless philosophical argument, as well as practical manipulation." Robinson, *Multiple Causation in Tort Law: Reflections on the DES Cases*, 68 *Va.L.Rev.* 713, 713 (1982). Although the concept resists definition, we have described proximate cause as a standard for limiting liability for the consequences of an act based " 'upon mixed considerations of logic, common sense, justice, policy and precedent.' " *Caputzal v. The Lindsay Co.*, 48 *N.J.* 69, 77–78, 222 *A*.2d 513 (1966) (quoting *Powers v. Standard Oil Co.*, 98 *N.J.L.* 730, 734, 119 *A.* 273 (Sup.Ct.1923), *aff'd o.b.*, 98 *N.J.L.* 893, 121 *A.* 926 (E. & A. 1923)); *accord* D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts*, § 41 at 264 (5th ed. 1984) (hereafter *Prosser and Keeton on Torts*).

■ Proximate cause is a factual issue, to be resolved by the jury after appropriate instruction by the trial court. In the routine case in which the plaintiff's injury can be traced to a single cause, the standard instruction on proximate cause—and the one used by the trial court in this case—describes it as "a cause which necessarily set the other causes in motion and was a substantial factor in bringing the accident about * * *," and further as a "cause which naturally and probably led to and might have been expected to produce the accident complained of." *Model Jury Charges (Civil)* § 7.11.

It is self-evident that in cases in which the defendant's negligence combines with a *preexistent* condition to cause an injury, the standard charge on proximate cause could confuse or mislead a jury. The language of the standard charge assumes that the defendant's negligence *began* a chain of events leading to the plaintiff's injury. If a plaintiff has a preexistent injury or disability and is then adversely affected by a defendant's negligence, the standard by which the jury evaluates causation must be expressed in terms consistent with the operative facts.

In *Evers v. Dollinger, supra*, 95 *N.J.* 399, 471 *A.*2d 405, we addressed causation in the context of allegations that a defendant's negligence exacerbated a plaintiff's preexistent illness. Defendant had failed to diagnose properly a lump in the plaintiff's right breast, which a second physician determined to be a cancerous growth requiring an extended mastectomy. At trial the plaintiff's expert testified that the malignant tumor increased in size during the seven months between the defendant's misdiagnosis and the eventual surgery. The trial court rejected a proffer of evidence that patients with infiltrating ductal carcinoma, the plaintiff's form of cancer, had a twenty-five-percent risk of recurrence after surgery, and that the seven-month delay in diagnosis and treatment increased the risk of recurrence. The trial court granted the defendant's motion for judgment on the ground that there was no proof that the defendant's deviation was a proximate cause of injury to the plaintiff. The Appellate Division affirmed. Pending determination of the plaintiff's appeal in this Court, the plaintiff's cancer was found to have metastasized in the form of cancer cells in the lung, and plaintiff's illness was characterized as terminal. *Id.* at 403–04, 471 *A.*2d 405. Reversing, we held that it was error to enter judgment for the defendant in the face of proofs establishing that the plaintiff's tumor had increased in size because of the delay in diagnosis and treatment, and had developed beyond its original site. *Id.* at 406, 471 *A.*2d 405. Moreover, the plaintiff was prepared to prove that she

suffered emotional distress attributable "to the growth of the tumor during the time proper treatment was withheld" and to the realization that the delay in treatment increased the risk of recurrence, *ibid.*, and we concluded that such proofs could be presented on retrial. *Id.* at 410, 471 *A.*2d 405.

In view of the information presented to the Court that the plaintiff's cancer had recurred and metastasized, we addressed in *Evers* the standard by which causation should be charged to the jury on retrial. In that connection we discussed a series of medical malpractice cases decided in Pennsylvania that applied "a standard of causation that is more flexible than that used in conventional tort claims." *Id.* at 413, 471 *A.*2d 405 (citing *Jones v. Montefiore Hosp.*, 494 *Pa.* 410, 431 *A.*2d 920 (1981); *Gradel v. Inouye*, 491 *Pa.* 534, 421 *A.*2d 674 (1980); *Hamil v. Bashline*, 481 *Pa.* 256, 392 *A.*2d 1280 (1978)). We noted that

[a] conspicuous feature of *Hamil*, and of the case before us, is that defendant was charged with having failed in a duty to protect against harm from another source; hence the fact-finder must consider not only what *did* occur but also what *might have* occurred:

Such cases by their very nature elude the degree of certainty one would prefer and upon which the law normally insists before a person may be held liable. Nevertheless, in order that an actor is not completely insulated because of uncertainties as to the consequences of his negligent conduct, Section 323(a) [of *Restatement (Second) of Torts*] tacitly acknowledges this difficulty and permits the issue to go to the jury upon a less than normal threshold of proof.

[*Id.* 95 *N.J.* at 415, 471 *A.*2d 405 (quoting *Hamil, supra,* 481 *Pa.* at 271, 392 *A.*2d at 1287–88 (footnote omitted)).]

Adopting the reasoning of these Pennsylvania decisions, we determined in *Evers* that the principle set forth in *Restatement (Second) of Torts* § 323(a)[1] applies to medical malpractice cases. Accordingly, we held that on retrial

---

[1]*Restatement (Second) of Torts* § 323(a) provides in pertinent part:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

plaintiff should be permitted to demonstrate, within a reasonable degree of medical probability, that the seven months delay resulting from defendant's failure to have made an accurate diagnosis and to have rendered proper treatment increased the risk of recurrence or of distant spread of plaintiff's cancer, and that such increased risk was a substantial factor in producing the condition from which plaintiff currently suffers. [*Id.* 95 *N.J.* at 417, 471 *A.*2d 405.]

The legal principle adopted by this Court in *Evers* reflects the emerging pattern of decisions on this issue in federal and state courts throughout the country. A clear majority of the courts that have considered proximate causation in the context of harm resulting from both a plaintiff's preexistent condition and a defendant's negligent discharge of a duty related to that condition have permitted the jury to consider whether defendant's negligence increased the risk of harm and whether such increased risk was a substantial factor in producing the harm. *See Keir v. United States,* 853 *F.*2d 398, 415–17 (6th Cir.1988) (evidence that optometrist's failure to diagnose retinoblastoma in plaintiff's left eye precluded resort to more conservative therapy permitting continued use of eye required trial court to assess evidence on causation in context of increased-risk test of *Evers v. Dollinger;* applying New Jersey law); *Daniels v. Hadley Memorial Hosp.,* 566 *F.*2d 749 (D.C.Cir.1977) (evidence that decedent sustained an anaphylactic reaction to penicillin injection and hospital personnel failed to administer immediate respiratory assistance and adrenalin held sufficient to raise jury issue whether negligence was substantial factor in causing death or depriving decedent of chance to survive); *McBride v. United States,* 462 *F.*2d 72, 75 (9th Cir.1972) (recovery not barred if negligent failure to provide treatment deprives patient of significant improvement in chances for recovery; applying Hawaii law); *O'Brien v. Stover,* 443 *F.*2d 1013, 1018 (8th Cir.1971) (evidence that defendant's failure to diagnose decedent's cancer considerably increased risk of death sufficient to

---

(a) his failure to exercise such care increased the risk of such harm * * *.

raise jury question on proximate causation; applying Iowa law); *Jeanes v. Milner*, 428 *F.*2d 598, 604–05 (8th Cir.1970) (evidence of forty-day delay in transmitting for pathological evaluation tissue slides revealing malignant lymphoma held sufficient to raise jury issue on whether delay was proximate cause of decedent's pain and suffering and ultimate death; applying Arkansas law); *Hicks v. United States*, 368 *F.*2d 626, 632–33 (4th Cir.1966) (evidence that doctor at United States naval base dispensary failed to diagnose and treat decedent's intestinal obstruction and that decedent would have survived with prompt surgical intervention held sufficient to establish that negligence was proximate cause of death; applying Virginia law); *Mays v. United States*, 608 *F.Supp.* 1476, 1479–83 (D.C.Colo.1985) (evidence that fifteen- to sixteen-month delay in diagnosing decedent's lung cancer was substantial factor in reducing chance of survival from forty percent to fifteen percent held sufficient to establish proximate causation; damages for decedent's future losses calculated at twenty-five percent of such losses to reflect value of lost chance to survive; applying Colorado law), *rev'd on other grounds*, 806 *F.*2d 976 (10th Cir.1986), *cert. denied*, 482 *U.S.* 913, 107 *S.Ct.* 3184, 96 *L.Ed.*2d 673 (1987); *James v. United States*, 483 *F.Supp.* 581, 585–87 (N.D.Cal.1980) (evidence that negligent delay in diagnosis and treatment of lung tumor decreased plaintiff's chance of survival and increased likelihood of pain and suffering held sufficient to establish proximate causation; applying California law); *Thompson v. Sun City Community Hosp., Inc.*, 141 *Ariz.* 597, 688 *P.*2d 605, 613–16 (Ariz.1984) (evidence that defendant hospital negligently transferred uninsured patient with transected femoral artery to county hospital thereby increasing risk of permanent injury held sufficient to raise jury question of proximate causation; reversing *Hiser v. Randolph*, 126 *Ariz.* 608, 617 *P.*2d 774 (Ariz.Ct.App.1980)); *Chambers v. Rush–Presbyterian–St. Luke's Medical Center*, 155 *Ill.App.*3d 458, 108 *Ill.Dec.* 265, 268–69, 508 *N.E.*2d 426, 429–30 (evidence that physician's failure to monitor decedent's blood sugar during intravenous feed-

ing, leading to coma and brain damage and increasing risk that undiagnosed pancreatic cancer would cause death, held sufficient to raise jury issue on proximate causation), *aff'd*, 116 *Ill*.2d 549, 113 *Ill.Dec.* 293, 515 *N.E.*2d 102 (1987); *Northern Trust Co. v. Louis A. Weiss Memorial Hosp.*, 143 *Ill.App.*3d 479, 97 *Ill.Dec.* 524, 493 *N.E.*2d 6, 11–12 (1986) (evidence that hospital's failure to provide specially-trained nurse in newborn nursery delayed notification to physician of infant's oxygen deficiency and increased risk of permanent brain damage held sufficient to raise jury question whether increased risk was substantial factor contributing to infant's injuries); *DeBurkarte v. Louvar*, 393 *N.W.*2d 131, 137–38 (Iowa 1986) (evidence that defendant's negligent failure to diagnose and treat plaintiff's breast cancer substantially reduced chances of survival held sufficient to present jury question on proximate causation, but recovery limited to value of lost chance of survival); *Roberson v. Counselman*, 235 *Kan.* 1006, 686 *P.*2d 149, 159–60 (1984) (evidence that defendant's failure to diagnose decedent's heart disease and refer him to specialist significantly increased risk of death held sufficient to raise jury issue whether defendant's negligence was substantial factor in causing death); *Hastings v. Baton Rouge Gen. Hosp.*, 498 *So.*2d 713, 720–21 (La.1986) (evidence that failure by defendant hospital and physicians to perform emergency surgery and alleviate internal bleeding increased risk of death held sufficient to raise jury issue on proximate causation); *Aasheim v. Humberger*, 215 *Mont.* 127, 695 *P.*2d 824, 827–28 (1985) (evidence that defendant failed to diagnose and treat knee tumor held sufficient to raise jury issue whether negligence was substantial factor in causing replacement of knee with prosthetic device); *McKellips v. Saint Francis Hosp., Inc.*, 741 *P.*2d 467, 474–77 (Okla.1987) (evidence that defendant hospital failed to diagnose and treat decedent's heart disease held sufficient to raise jury issue whether increased risk attributable to defendant's negligence was substantial factor in causing death, but damages limited to value of lost chance to survive); *Jones v. Montefiore Hosp.*,

*supra,* 494 *Pa.* 410, 431 *A.*2d 920, 923–25 (1981) (evidence that defendant's failure to remove by surgery cancerous mass that subsequently metastasized held sufficient to raise jury issue whether negligence was substantial factor in causing harm sustained by plaintiff); *Gradel v. Inouye, supra,* 491 *Pa.* 534, 421 *A.*2d 674, 679 (1980) (evidence that defendant failed to x-ray and diagnose lump at site of forearm fracture increased risk of metastasis held sufficient to raise jury question whether negligence was substantial factor in causing partial amputation of patient's arm); *Hamil, supra,* 481 *Pa.* at 265–274, 392 *A.*2d at 1284–89 (evidence that defendant hospital failed to diagnose and treat decedent's heart condition sufficient to present jury issue whether negligent conduct increased risk of death and was substantial factor in causing death); *Brown v. Koulizakis,* 229 *Va.* 524, 331 *S.E.*2d 440, 446 (1985) (evidence that defendant failed to diagnose and treat decedent for pulmonary embolism resulting in death held sufficient to present jury issue on proximate causation); *Herskovits v. Group Health Cooperative of Puget Sound,* 99 *Wash.*2d 609, 664 *P.*2d 474, 477–79 (1983) (evidence that defendant's failure to diagnose and treat decedent's lung cancer reduced decedent's chance of surviving five years from thirty-nine percent to twenty-five percent held sufficient to raise jury issue on proximate causation).

Some courts, however, adhere to a stricter formulation of proximate cause, requiring proof that the defendant's failure properly to treat the preexistent condition was a *probable* cause of the resultant injury. *See Gooding v. University Hosp. Bldg., Inc.,* 445 *So.*2d 1015, 1018–20 (Fla.1984); *Walden v. Jones,* 439 *S.W.*2d 571, 576 (Ky.1968); *Cornfeldt v. Tongen,* 295 *N.W.*2d 638, 640 (Minn.1980); *Clayton v. Thompson,* 475 *So.*2d 439, 445 (Miss.1985); *Cooper v. Sisters of Charity of Cincinnati, Inc.,* 27 *Ohio St.*2d 242, 272 *N.E.*2d 97, 104 (1971). This more restrictive standard for proving proximate cause reflects the view that

> [r]elaxing the causation requirement might correct a perceived unfairness to
> some plaintiffs who could prove the possibility that the medical malpractice

caused an injury but could not prove the probability of causation, but at the same time could create an injustice. Health care providers could find themselves defending cases simply because a patient fails to improve or where serious disease processes are not arrested because another course of action could possibly bring a better result. No other professional malpractice defendant carries this burden of liability without the requirement that plaintiffs prove the alleged negligence probably rather than possibly caused the injury. [*Gooding v. University Hosp. Bldg., Inc., supra*, 445 *So.*2d at 1019–20 (citation omitted).]

The minority view has been criticized for putting "a premium on each party's search for the willing witness," *Thompson v. Sun City Community Hosp., supra*, 141 *Ariz.* at 607, 688 *P.*2d at 615, and for rendering health care providers "free of liability for even the grossest malpractice if the patient had only a fifty-fifty chance of surviving the disease or injury even with proper treatment." *Roberson v. Counselman, supra*, 235 *Kan.* at 1021, 686 *P.*2d at 160. As the Supreme Court of Oklahoma observed:

We think in those situations where a health care provider deprives a patient of a significant chance for recovery by negligently failing to provide medical treatment, the health care professional should not be allowed to come in after the fact and allege that the result was inevitable inasmuch as that person put the patient's chance beyond the possibility of realization. Health care providers should not be given the benefit of the uncertainty created by their own negligent conduct. To hold otherwise would in effect allow care providers to evade liability for their negligent actions or inactions in situations in which patients would not necessarily have survived or recovered, but still would have a significant chance of survival or recovery. [*McKellips v. Saint Francis Hosp., Inc., supra*, 741 *P.*2d at 474.]

We adhere to our holding in *Evers*. Evidence demonstrating within a reasonable degree of medical probability that negligent treatment increased the risk of harm posed by a preexistent condition raises a jury question whether the increased risk was a substantial factor in producing the ultimate result. *Evers v. Dollinger, supra*, 95 *N.J.* at 417, 471 *A.*2d 405. The rationale underlying the use of a two-pronged jury instruction bears elaboration. Because this modified standard of proximate causation is limited to that class of cases in which a defendant's negligence combines with a preexistent condition to cause harm—as distinguished from cases in which the deviation alone

is the cause of harm—the jury is first asked to verify, as a matter of reasonable medical probability, that the deviation is within the class, *i.e.,* that it increased the risk of harm from the preexistent condition. *Accord Hamil, supra,* 481 *Pa.* at 268–273, 392 *A.*2d at 1286–88; *Daniels v. Hadley Memorial Hosp., supra,* 566 *F.*2d at 757–58; *Roberson v. Counselman, supra,* 235 *Kan.* at 1019–1020, 686 *P.*2d at 159; *Restatement (Second) of Torts* § 323(a). Assuming that the jury determines that the deviation increased the risk of harm from the preexistent condition, we use the "substantial factor" test of causation because of the inapplicability of "but for" causation to cases where the harm is produced by concurrent causes. *See Prosser and Keeton on Torts,* § 41 at 266–68; Malone, *Ruminations on Cause-In-Fact,* 9 *Stan.L.Rev.* 60, 88–90 (1956). The "substantial factor" standard requires the jury to determine whether the deviation, in the context of the preexistent condition, was sufficiently significant in relation to the eventual harm to satisfy the requirement of proximate cause. *Accord Brown v. United States Stove Co.,* 98 *N.J.* 155, 172, 484 *A.*2d 1234 (1984); *Hamil, supra,* 481 *Pa.* at 272–274, 392 *A.*2d at 1288–89.

We are also fully in accord with the Appellate Division's conclusion that the jury should have been instructed in accordance with *Evers,* even though plaintiffs' proofs may have satisfied traditional standards of proximate causation. 225 *N.J.Super.* at 582, 543 *A.*2d 95.

### III.

■ The trial court's rejection of plaintiffs' requested jury instruction on damages, *supra* at 101–103, 574 *A.*2d at 401–402, affirmed by the Appellate Division, 225 *N.J.Super.* at 584, 543 *A.*2d 95, implicates the measure of damages on remand. Although defendant's petition for certification does not raise the issue, the question of allowable damages in *Evers*-type cases was addressed in the *amicus* brief submitted by the New Jersey Medical Malpractice Reinsurance Association. We con-

sider and decide the issue because of its significance both on retrial and in similar litigation.

We noted in *Ostrowski v. Azzara*, 111 *N.J.* 429, 439, 545 *A.*2d 148 (1988), the general principle that "a defendant whose acts aggravate a plaintiff's preexisting condition is liable only for the amount of harm actually caused by the negligence." (citing 2 F. Harper & F. James, *Law of Torts* § 20.3 at 1128 (1956); *Prosser and Keeton on Torts, supra,* § 52 at 349. In *Fosgate v. Corona, supra,* 66 *N.J.* 268, 330 *A.*2d 355, we recognized that principle in the context of a claim of medical malpractice involving treatment of a preexistent disease. We held in *Fosgate* that

> where the malpractice or other tortious act aggravates a preexisting disease or condition, the innocent plaintiff should not be required to establish what expenses, pain, suffering, disability or impairment are attributable solely to the malpractice or tortious act, but that the burden of proof should be shifted to the culpable defendant who should be held responsible for all damages unless he can demonstrate that the damages for which he is responsible are capable of some reasonable apportionment and what those damages are. [*Id.* at 272–73, 330 *A.*2d 355.]

Rejecting plaintiffs' request for a *Fosgate* charge on the issue of damages, the trial court determined that plaintiff Jamie Scafidi's premature labor was not a preexistent condition because it "occurred immediately before a phone call to Dr. Seiler whereby the plaintiff was seeking some relief * * *." The Appellate Division recognized Ms. Scafidi's labor as a preexistent condition, but concluded that defendant's failure to intervene effectively did not "exacerbate" the condition, rendering *Fosgate* inapplicable. 225 *N.J.Super.* at 584, 543 *A.*2d 95. We disagree with the reasoning advanced both by the Law Division and the Appellate Division for rejecting the *Fosgate* charge. As noted, however, *supra* at 102, 574 *A.*2d at 402, the rejection of the *Fosgate* charge did not prejudice plaintiffs. Unlike the trial court in *Fosgate,* the trial court here did not instruct the jury that defendant had no liability for damages attributable to Ms. Scafidi's preexistent condition. In effect, the charge on damages did not acknowledge that plaintiffs'

damage claim was capable of apportionment, and exposed defendant to liability for all damages sustained by plaintiffs if the jury found defendant's negligence to be a proximate cause of the infant's premature birth and death.

The critical issue that should have determined the applicability of the *Fosgate* charge is whether defendant's liability for damages is capable of any apportionment. Stated differently, the question is whether plaintiffs' damage claim should be limited to the value of the lost chance for recovery, in recognition of the evidence that the infant's premature birth and death might have occurred even if defendant's treatment was nonnegligent.

In *Evers* we acknowledged the analysis offered by Professor King, the pre-eminent commentator on the question, proposing that in *Evers*-type cases a plaintiff's recovery be limited to the value of the lost chance of avoiding harm. *Evers*, 95 *N.J.* at 412 n. 7, 471 *A.*2d 405. Professor King's thesis is that in such cases

[t]he defendant should be subject to liability only to the extent that he tortiously contributed to the harm by allowing a preexisting condition to progress or by aggravating or accelerating its harmful effects, or to the extent that he otherwise caused harm in excess of that attributable solely to preexisting conditions. The effect of preexisting conditions should depend on the extent to which such conditions affect the present and future value of the interest lost. [King, *Causation Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 *Yale L.J.* 1353, 1360 (1981) (hereafter King, *Causation and Valuation*) (footnote omitted).]

The following example is offered to illustrate application of "lost chance" damages:

[C]onsider a patient who suffers a heart attack and dies as a result. Assume that the defendant-physician negligently misdiagnosed the patient's condition, but that the patient would have had only a 40% chance of survival even with a timely diagnosis and proper care. Regardless of whether it could be said that the defendant caused the decedent's death, he caused the loss of a chance, and that chance-interest should be completely redressed in its own right. Under the proposed rule, the plaintiff's compensation for the loss of the victim's chance of surviving the heart attack would be 40% of the compensable value of the victim's life had he survived (including what his earning capacity would other-

wise have been in the years following death). The value placed on the patient's life would reflect such factors as his age, health, and earning potential, including the fact that he had suffered the heart attack and the assumption that he had survived it. The 40% computation would be applied to that base figure. [*Id.* at 1382 (footnote omitted).]

In a number of cases courts have adopted or acknowledged the soundness of the concept that a plaintiff's recovery in *Evers*-type cases should ordinarily be limited to lost-chance damages. *Mays v. United States, supra,* 608 *F.Supp.* at 1482–83; *James v. United States, supra,* 483 *F.Supp.* at 587; *DeBurkarte v. Louvar, supra,* 393 *N.W.*2d at 137; *McKellips v. Saint Francis Hosp., Inc., supra,* 741 *P.*2d at 475–77; *Herskovits v. Group Health Cooperative of Puget Sound, supra,* 99 *Wash.*2d at 632–635, 664 *P.*2d at 486–87 (Pearson, J., concurring). The principle is also supported by other commentators. Andel, *Medical Malpractice: The Right to Recover for the Loss of a Chance of Survival,* 12 *Pepperdine L. Rev.* 973, 998 (1985); Note, *Increased Risk of Harm: A New Standard for Sufficiency of Evidence of Causation in Medical Malpractice Cases,* 65 *B.U.L.Rev.* 275, 303–06 (1985); Note, *Herskovits v. Group Health Cooperative: Negligent Creation of a Substantial Risk of Injury is a Compensable Harm,* 9 *U. Puget Sound L.Rev.* 251 (1985); Note, *Recovery for Loss of Chance in a Wrongful Death Action,* 59 *Wash.L.Rev.* 981, 991–92 (1984).

In our view, a rule that limits a plaintiff's damages in *Evers*-type cases to the value of the lost chance of recovery is an essential complement to *Evers'* modification of the proof required to establish proximate causation. It should be a self-evident principle of tort law that valuation of allowable damages "is animated by a premise similar to that underlying causation: that a tortfeasor should be charged only with the value of the interest he destroyed." King, *Causation and Valuation, supra,* 90 *Yale L.J.* at 1356. To the extent that a plaintiff's ultimate harm may have occurred solely by virtue of a preexistent condition, without regard to a tortfeasor's intervening negligence, the defendant's liability for damages should

be adjusted to reflect the likelihood of that outcome. That principle is basic in our decisional law. *See Ostrowski v. Azzara, supra,* 111 *N.J.* at 439, 545 *A.*2d 148; *Fosgate v. Corona, supra,* 66 *N.J.* at 272–73, 330 *A.*2d 355. It also serves an important societal interest in the context of medical-malpractice litigation. A rule of law that more precisely confines physicians' liability for negligence to the value of the interest damaged should have a salutary effect on the cost and availability of medical care. *See Frame v. Kothari,* 115 *N.J.* 638, 651–53, 560 *A.*2d 675 (1989) (Wilentz, C.J., and Garibaldi, J., concurring).

Our holding is also consistent with the principles underlying the comparative-negligence statute, *N.J.S.A.* 2A:15–5.1 (damages sustained shall be diminished by percentage of negligence attributable to person recovering), and the joint-tortfeasor-contribution statute, *N.J.S.A.* 2A:53A–3 (permitting tortfeasor paying judgment in excess of prorata share to recover contribution from other tortfeasors). It imposes no novel burden on jurors, who are routinely instructed in tort cases to apportion fault in order to permit the trial court to mold the verdict. See *N.J.S.A.* 2A:15–5.2; *Model Jury Charges (Civil)* § 8.30. Thus we foresee no practical impediment to a rule that requires juries in *Evers*-type cases to determine from the evidence adduced the likelihood that a plaintiff's ultimate harm would have occurred irrespective of the defendant's negligence.

## IV.

To recapitulate, the judgment of the Appellate Division is modified and affirmed. On retrial the trial court will instruct the jury on causation in the manner prescribed by *Evers v. Dollinger, supra,* 95 *N.J.* at 417, 471 *A.*2d 405. Consistent with *Fosgate v. Corona, supra,* 66 *N.J.* at 272–73, 330 *A.*2d 355, to the extent that defendant seeks to apportion damages, defendant must produce evidence tending to show that the infant's premature birth and death could have been attributable solely

to the preexistent condition, irrespective of defendant's negligence, a fact apparently not contested by plaintiffs' proofs. Based on the evidence adduced, the jury will be instructed to determine the likelihood, on a percentage basis, that the infant's birth and death would have occurred even if defendant's treatment was faultless. In the event of a jury verdict against defendant on liability and damages, the trial court will mold the verdict to limit defendant's liability to the value of the lost chance for recovery attributable to defendant's negligence.

In view of the significant change in the law represented by our holding concerning the measure of damages, the effect and application of that holding, except with respect to this case and *Olah v. Slobodian*, 119 *N.J.* 119, 574 *A.*2d 411 (1990), also decided today, shall be prospective only. *See Weinberg v. Dinger*, 106 *N.J.* 469, 496, 524 *A.*2d 366 (1987).

HANDLER, J., concurring.

The decision of the Court in this case brings greater clarity to the concept of proximate cause in the context of a medical malpractice action in which the negligence of the defendant has increased the risk of harm to the plaintiff. Its decision on this point is an important and sensible refinement of our prior determinations. The Court also explains that for purposes of determining damages the increased risk of harm proximately caused by the malpractice of the defendant can be valued separately from the harm attributable to any preexistent condition, and holds that such damages should then be apportioned accordingly. This holding not only is instructive in terms of understanding compensatory damages, it also has important implications in terms of potential liability for torts that increase the risk of future harm.

In its treatment of causation, the Court builds on the authority of our decision in *Evers v. Dollinger*, 95 *N.J.* 399, 417, 471 *A.*2d 405 (1989). We there recognized that the increased risk of harm occasioned by a defendant's malpractice was itself a relevant consideration in determining liability. The Court

quotes with approval, *ante* at 104, 574 *A*.2d at 403, our holding in *Evers* that a

plaintiff should be permitted to demonstrate, within a reasonable degree of medical probability, that the seven months delay resulting from defendant's failure to have made an accurate diagnosis and to have rendered proper treatment increased the risk of recurrence or of distant spread of plaintiff's cancer, and that such increased risk was a substantial factor in producing the condition from which plaintiff currently suffers. [95 *N.J.* at 417, 471 *A*.2d 405.]

It also observes:

A clear majority of the courts that have considered proximate causation in the context of harm resulting from both a plaintiff's preexistent condition, and a defendant's negligent discharge of a duty related to that condition, have permitted the jury to consider whether defendant's negligence increased the risk of harm and whether such increased risk was a substantial factor in producing the harm. (citations omitted) [*Ante* at 104, 574 *A*.2d at 403.]

The Court takes care to emphasize that its ruling is "limited to that class of cases in which a defendant's negligence combines with a preexistent condition to cause harm." *Ante* at 108, 574 *A*.2d at 406. It invokes the "substantial factor" test of causation, which calls for a determination "whether deviation, in the context of the preexistent condition, was sufficiently significant in relation to the eventual harm to satisfy the requirement of proximate cause." *Ante* at 109, 574 *A*.2d at 406. This standard is consistent with what we held in *Evers v. Dollinger, supra,* and with what was implicated in *Gaido v. Weiser,* 115 *N.J.* 310, 558 *A*.2d 845 (1989). The latter case involved a claim relating to a patient suffering from a preexistent condition—he was mentally ill and suicidal—whose death by suicide was allegedly caused in part by the medical malpractice of the defendant. The Court, in affirming the judgment of the Appellate Division, impliedly acknowledged the soundness of the *Evers* standard of causation in this kind of malpractice case. That standard can be understood to entail the inquiry whether "the increased risk of suicide by [the patient] caused by [the defendant's] failure to provide adequate medical treatment was itself a substantial factor that contributed to [the patient's] suicide." 115 *N.J.* at 314–15, 558 *A*.2d 845 (Handler,

J., concurring). These views conform to and support those now expressed in the Court's opinion.

In its consideration of compensatory damages, the Court builds on the authority of *Fosgate v. Corona,* 66 *N.J.* 268, 330 *A.*2d 355 (1974). It rules that damages in this kind of case—one involving malpractice that causes an increased risk of harm—should be limited by apportionment. It holds, in effect, that the malpractice defendant can and should be held liable in damages but only for the value of the increased risk of future or eventual harm that can be attributed to the conduct of the defendant; such a defendant should not be liable in damages for the harm itself when this can be attributed to other causes, *i.e.,* a preexistent condition. For this proposition the Court quotes with approval Professor King, "the pre-eminent commentator," King, *Causation Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 *Yale L.J.* 1353, 1360 (1981), *ante* at 111, 574 *A.*2d at 407, and also brings to our attention the cases and commentators that have endorsed "the soundness of the concept that plaintiff's recovery in *Evers*-type cases should ordinarily be limited to lost-chance damages." *Ante* at 407, 574 *A.*2d at 112 (citations omitted).

The Court, in its discussion of damages, uses the term "lost-chance damages"—those measured by the "lost chance" to avoid or prevent future harm. This terminology obscures somewhat the fact that the Court's discussion of damages is equally understandable if it were couched in terms of the increased risk of harm. The opinion, in practical effect, focuses on increased risk as a discrete element of compensatory damages. The reference to "lost chance" to avoid further harm can be understood to embrace the "reduced chance" to avoid such harm. For purposes of apportioning damages, there is no conceptual difference between malpractice that reduces a patient's chances of averting future harm and malpractice that negates or eliminates such a chance. *See ante* at 103, 574 *A.*2d at 403. If we characterize such damages as involving the

"reduced chance" to avert future harm, then we can more readily see that it is the functional equivalent of the increased risk of future harm.

Thus, to say, as the Court effectively does, that the increased risk of future harm can be valued for purposes of apportioning compensatory damages is to say that such an increased risk can be valued as a discrete or separate element of compensatory damages. This is so whether the determination of damages entails the establishment or the apportionment of damages. It should, analytically, make no difference in terms of the ability to ascribe a value to the increased risk of harm whether that value is used as a *subtraction* from a greater amount of damages or as an *addition* to other damages. With respect to either of these determinations or results, the process of valuation is the same.

I have previously questioned the fairness and wisdom of a requirement that future or eventual harm actually be sustained in order to permit a recovery for malpractice that increases the risk of future harm. *Ayers v. Jackson Township*, 106 *N.J.* 557, 614–21, 525 *A.*2d 287 (1987) (Handler, J., concurring in part and dissenting in part); *Evers v. Dollinger, supra*, 95 *N.J.* at 421–30, 471 *A.*2d 405 (Handler, J., concurring). The implications of the Court's application of *Fosgate* to this case lead me once again to question the requirement of harm as a precondition to recovery in increased-risk-of-harm cases. Given the Court's basic conclusion—that damages can be calculated for the increased risk of harm—I find no principled basis for insisting that a plaintiff incurring an increased risk of future harm as a result of medical malpractice, or, indeed, of other kinds of tortious misconduct, *see, e.g., Ayers v. Jackson Township, supra*, 106 *N.J.* 557, 525 *A.*2d 287, can recover only if and when that harm eventually occurs. The occurrence of ultimate harm simply does not bear on whether the chance of avoiding or the risk of incurring that harm can otherwise be demonstrated and valued for purposes of awarding damages.

I remain persuaded that the occurrence of ultimate harm should not be a condition precedent to the recovery of compensatory damages. If that chance or risk is demonstrated by evidence grounded in reasonable medical possibility, it should, based on ordinary experience and notions of fairness and sound policy, constitute a sufficient basis for redress. The Court's logic itself dictates that if it is possible to ascribe a value to the increased risk of future harm, the actual occurrence of that harm ought not be the condition precedent to recovery. To emphasize the point, I repeat what I stated in *Ayers v. Jackson Township:*

> The majority reasons that plaintiffs' claim is not cognizable in part because the risk of future disease does not rise to the level of "reasonable probability." *See ante* [106 *N.J.*] at 591–599 [525 *A.*2d 287]. Yet the Court concedes, for the purpose of argument, that the plaintiffs have proven that they have a "significantly … enhanced risk" of contracting serious diseases. *Ante* [106 *N.J.*] at 591 [525 *A.*2d 287]. It nowhere explains why a risk that generates the "reasonable probability" of future injury can be compensated while one that "significantly enhances" the likelihood of future injury cannot.
>
> I do not criticize the Court for illogic or inconsistency. I stress only that if it is just and fair, and it is, to compensate a victim in one case for an unquantified enhanced risk of future disease, it cannot be right to deny recovery in a second case also involving a claim of unquantified enhanced risk. [106 *N.J.* at 617, 525 *A.*2d 287 (Handler, J., concurring in part and dissenting in part).]

I would now add, in light of the Court's holding that damages attributable to a measurable enhanced risk should be apportioned, that if it is just and fair—and it is—to compensate a victim in one case, where the harm has occurred, for a measurable risk of future harm, then it cannot be right to deny recovery in a second case, where the harm has not yet occurred, that also involves a claim of a measurable risk of future harm.

Moreover, I remain of the view that for purposes of awarding compensatory damages based on the increased risk of future harm caused by the tortious conduct of others, we need not insist on a quantification of the risk of future harm with mathematical exactitude. What should suffice is the reality confirmed by common sense and ordinary experience that a plaintiff has actually incurred the increased risk of future harm. I stressed this, also, in *Ayers v. Jackson Township:*

Allowing recovery for enhanced risk in *Evers* where the plaintiff suffered subsequent harm cannot be reconciled with the denial of recovery for enhanced risk in the present case. The majority professes to deny compensation because it cannot "measure" or "quantify" the enhanced risk of future injury [to plaintiff's suffering exposure to toxic chemicals]. The fact that the plaintiffs in the present case have not—yet—suffered extreme symptoms is no justification for denying recovery. As in *Evers v. Dollinger*, "[t]he Court is ... troubled by a seeming inability to quantify the risk of future cancer. But, adding the incurrence of future harm as a requirement for the recovery for such increased risk does not resolve the dilemma since the risk still remains unquantified." *Id.* 95 *N.J.* at 421, 471 *A.2d* 405 (Handler, J., concurring). When the Court allowed recovery for enhanced risk in *Evers*, it did not in the slightest way insist that the risk be quantified. [106 *N.J.* at 616–17, 525 *A.2d* 287 (Handler, J., concurring in part and dissenting in part).]

I add these reasons in concurring in the opinion of the Court.

Justice HANDLER concurs in the result.

*For Modification, Affirmance and Remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.