690 A.2d 147

IRENE GOLINSKI, PLAINTIFF–RESPONDENT, AND MACIEJ GOLINSKI, PLAINTIFF, v. HACKENSACK MEDICAL CENTER, DR. M. CONLEY, BAKHTAVER IRANI, M.D., KLAIRE DOYLE ARCHER, S.T., LINDA DE JONGHE BRUNO, R.N., JOHN DOES AND ABC CORPORATIONS, (FICTITIOUS NAMES FOR UNKNOWN PERSONS AND/OR ENTITIES), DEFENDANTS, AND ELIZABETH DEL ROSARIO, M.D., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 7, 1996—Decided March 20, 1997.

Before Judges SKILLMAN, A.A. RODRÍGUEZ and CUFF.

*Leonard A. Weitzman* argued the cause for appellant (*Weitzman & Weitzman*, attorneys; *Mr. Weitzman* on the brief).

*Jane S. Kelsey* argued the cause for respondent (*Reiseman & Sharp*, attorneys; *Ms. Kelsey* of counsel and on the brief).

No other parties participated in this appeal.

The opinion of the court was delivered by

CUFF, J.A.D.

In this medical malpractice case, we must determine whether the jury should have been instructed in accordance with the increased risk of harm standard of causation of *Scafidi v. Seiler*, 119 *N.J.* 93, 574 *A.*2d 398 (1990). Because defendant did not establish that plaintiff suffered from a pre-existing condition, we conclude that the trial judge correctly rejected defendant's request for the *Scafidi* charge and affirm.

The basic facts are relatively straightforward. In 1983, plaintiff Irene Golinski underwent surgery to remove an ovary. In January 1989, plaintiff gave birth to her first child by Caesarean section. In November 1990, she delivered her second child by Caesarean section. During this delivery, plaintiff suffered bleeding which her obstetrician, defendant Dr. Elizabeth Del Rosario (Del Rosario), attributed to adhesions which developed after her two prior surgical procedures. To control the bleeding, Del Rosario applied pressure with laparotomy pads. The bleeding was successfully controlled and plaintiff's second child was delivered without further incident.

Plaintiff experienced extreme pain following this delivery. Initially, the pain subsided within seven to ten days after the delivery. Approximately six weeks after the birth of her second child, plaintiff noticed a cyst-like formation on her left side. Plaintiff brought this to the attention of Del Rosario's partner, Dr. Irani, but no treatment was rendered.

In March 1991, plaintiff visited her family doctor with complaints of lightheadedness. She also showed her family doctor the cyst-like formation, which had grown. She was referred to her obstetrician/gynecologist. Dr. Irani ordered a CT scan which revealed the presence of a foreign object, a laparotomy pad twelve inches square.

On March 29, 1991, plaintiff underwent surgery performed by Del Rosario and her partner. Upon opening the peritoneum, Del Rosario discovered the laparotomy pad and some purulent material. She also discovered that the laparotomy pad was inextricably intertwined with the omentum, a protective drape that hangs over the small bowel and prevents entanglement of the bowel. Del Rosario removed the pad and omentum. Prior to closing the incision, she examined the small bowel. She found no abnormalities or adhesions in the area of the small bowel.

Following the March 1991 surgery, plaintiff's abdominal discomfort did not subside. In 1993, she became pregnant with her third child. On August 27, 1993, plaintiff underwent surgery to relieve a bowel obstruction. The surgery was successful. Eight to ten weeks after the surgery, plaintiff returned to work on a part-time basis. Her third child was born without further incident in December 1993. Following the birth, plaintiff returned to work full-time, but still suffers some abdominal discomfort.

On July 3, 1991, plaintiff and her husband filed this action against defendants Hackensack Medical Center, Del Rosario, Dr. M. Conley, Dr. M. Schlesinger, Dr. Diamont, Klaire Doyle Archer, S.T., Linda DeJonghe Bruno, R.N., and various fictitiously named defendants, which alleged that defendants committed malpractice during the November 1990 delivery of the couple's second child.

At the close of defendants' case, a directed verdict was entered against defendants Doyle Archer and DeJonghe Bruno, the surgical technician and nurse who were responsible for counting the laparotomy pads used during surgery. Plaintiff's medical malpractice claim against Del Rosario was submitted to the jury which found that Del Rosario deviated from accepted standards of medical care in her treatment of plaintiff and that the deviation was a proximate cause of her injuries.[1] The jury apportioned the negligence equally between defendants Del Rosario, Doyle Archer, and DeJonghe Bruno and awarded $500,000 in compensatory damages. Following denial of Del Rosario's motion for a new trial or remittitur, Del Rosario filed a notice of appeal.

In his charge, Judge McLaughlin instructed the jury on the issue of causation as follows:

> By proximate cause is meant that the negligent conduct of the defendant was an efficient cause of the accident and resulting injuries. That is a cause which necessarily set other causes in motion and was a substantial factor in bringing [about] the accident and injuries complained of. It's defined as a cause which naturally and probably led to and might have been expected to produce the accident and injuries complained of.

Del Rosario argues that this charge was appropriate only for that part of plaintiff's claim concerning the failure to remove the laparotomy pad. She contends that as to that part of the claim which concerns the bowel surgery, she was entitled to an increased risk of harm charge. Del Rosario insists that such a charge is necessary because of plaintiff's pre-existing condition, the abdominal adhesions which formed after her prior surgical procedures and her propensity to develop adhesions.

In *Scafidi*, the Court explicated the increased risk of harm standard of causation originally announced in *Evers v. Dollinger*, 95 *N.J.* 399, 471 *A.*2d 405 (1984). The Court observed that this modified standard of causation is limited to the class of cases in which a defendant's negligence combines with a pre-existing condi-

---

[1] Defendants Hackensack Medical Center and Drs. Conley, Schlesinger and Diamont did not participate in the trial. We have not been informed how the claims against these defendants were resolved.

tion to cause harm, rather than the class of cases in which the deviation alone is the cause of harm. *Scafidi, supra,* 119 *N.J.* at 108–09, 574 *A.*2d 398. A pre-existing condition or disease is "one that has become sufficiently associated with a plaintiff prior to the defendant's negligent conduct so that it becomes a factor that affects the value of the plaintiff's interest destroyed by the defendant." *Anderson v. Picciotti,* 144 *N.J.* 195, 211, 676 *A.*2d 127 (1996) (citing Joseph H. King, Jr., *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 *Yale L.J.* 1353, 1357 (1981)). The tumor in *Evers* and the premature labor in *Scafidi* are illustrations of a pre-existing condition. In each case, the patient sought treatment from a physician with the express purpose to obtain treatment which would alter or delay the outcome attributable to the condition.

■ Because the increased risk of harm standard of causation provides a lower threshold of proof, it is generally sought by a plaintiff. However, because a plaintiff's damages are limited to the value of the lost chance of recovery, a defendant also may seek such a jury instruction. In such cases, as in this case where the plaintiff resists the charge and there is a dispute with regard to the existence of a pre-existing condition, it is the burden of the defendant to establish the existence of the pre-existing condition and to segregate recoverable damages from those solely incident to the pre-existing condition. This burden is measured by a fair preponderance of the evidence. *Anderson, supra,* 144 *N.J.* at 211–12, 676 *A.*2d 127. Based on this standard, we conclude that Judge McLaughlin properly rejected Del Rosario's request for an increased risk of harm instruction.

■ Here, all the medical witnesses agreed that plaintiff suffers from a propensity to develop adhesions. All agreed that any abdominal surgery increases the risk that adhesions will form in the abdomen and that a bowel obstruction may occur. All agreed that the August 1993 bowel obstruction was caused by adhesions. All doctors observed that adhesions were present in the abdominal

cavity at or near the sites of the previous surgeries. Significantly, each doctor opined that adhesions do not beget adhesions. All agreed that adhesions do not migrate. No doctor who treated plaintiff observed any adhesions in the area of the small bowel at the time of the surgery to remove the laparotomy pad, nor do the records of the prior surgery reveal the existence of any adhesions in the small bowel.

Del Rosario testified that when she removed the laparotomy pad in 1991, she discovered purulent material, which might have been indicative of infection. She also testified that she manipulated the bowel to make sure there were no other foreign bodies. Plaintiff's expert, Dr. Michael Kreïtzer, noted that there is a risk of bowel obstruction whenever the bowel is manipulated. He also opined that the removal of the omentum, a drape designed to alleviate bunching of the intestines, increased the likelihood of a subsequent bowel obstruction. Dr. Wilchins, a defense expert, opined that each surgery increases the risk for development of adhesions and that the existence of adhesions increases the risk for developing a bowel obstruction. Yet he could not state with any degree of medical probability that plaintiff's earlier surgery and resulting adhesions contributed to the bowel obstruction.

Based on this record, Del Rosario did not carry her burden to establish a pre-existing condition and to segregate recoverable damages from those solely incident to the pre-existing disease. To be sure, Del Rosario established that plaintiff suffered from a propensity to develop adhesions. However, that condition is not an infectious process. The existing adhesions did not migrate to the area of the small bowel or cause the irritation that precipitated the formation of the adhesions in that area. Rather, the record demonstrates that the surgery required to remove the laparotomy pad required extensive invasion of the abdominal cavity, including manual manipulation of the small bowel and surgical revisions which removed structures designed to prevent bowel obstructions. That significant irritation was enough to cause the formation of the adhesions in the area of the small bowel which led directly to

the bowel obstruction which necessitated the August 1993 surgical intervention. Moreover, formation of adhesions in the area of the small bowel as a result of manipulation of that organ is a recognized risk of the procedure, even for patients with no prior history of adhesions. Perhaps the situation is best described by Dr. Kreitzer in response to a question posed by Judge McLaughlin:

> THE COURT: Doctor, you gave an opinion that the bowel obstruction was related to the surgeries to remove the laparotomy pad and the next surgery. Was that to a reasonable degree of medical probability, that opinion?
>
> [DR. KREITZER]: Yes. It's a cascade. In other words, the foreign body being the laparotomy pad sets up an infectious process. Then you have to do additional surgery in an area and remove some protective tissue. That causes—makes you manipulate the intestine, the small intestine. And any manipulation of the small intestine theoretically increases the chance of future bowel obstruction.

At most, Del Rosario was able to establish that plaintiff had a propensity to form adhesions if surgical procedures were required. However, without Del Rosario's negligence, the laparotomy pad would have been removed, no inflammatory process would have been initiated, and further surgery would not have been required. It was her negligence which set other causes in motion and was a substantial factor in bringing about the two subsequent surgical interventions.

Defendant also argues that the jury award of $500,000 is excessive. We disagree. The award does not shock the judicial conscience and is reasonably supported by the record. *Baxter v. Fairmont Food Co.*, 74 *N.J.* 588, 599, 379 *A.*2d 225 (1977).

Affirmed.