257 N.J. Super. 214 (1992)
608 A.2d 383
SHIRLEY ROSES, INDIVIDUALLY AND AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE HEIRS AT LAW AND ESTATE OF MIRIAM ROSES, DECEASED, PLAINTIFF-RESPONDENT,
v.
DR. MORRIS B. FELDMAN, DEFENDANT-APPELLANT, AND DR. LEO LEVITOV, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 1992.
Decided June 5, 1992.
Released for Publication July 9, 1992.
*215 Before Judges J.H. COLEMAN and BILDER.
Judith A. Heim argued the cause for appellant (Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, attorneys; Judith A. Heim, on the brief).
Gerard J. Gilligan argued the cause for respondent (Goldstein, Ballen, O'Rourke & Wildstein, attorneys; Gerard J. Gilligan, on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
This is a medical malpractice action. Plaintiff generally claimed that defendant Dr. Morris Feldman was negligent in a failure to order chest x-rays when he treated plaintiff's decedent for a cough; that the negligence delayed the diagnosis and treatment of lung cancer; and that this resulted in a lost chance of a better prognosis and, perhaps, survival. Following a four day trial, the jury found that defendant was negligent and that his negligence increased the risk of harm to plaintiff's decedent and was a substantial factor in producing injury and/or death to her. It fixed damages at $100,000 for pain, suffering, disability, impairment and lost chance of survival and $70,000 for wrongful death (modified by the court to $39,101.97). Defendant appeals from the denial of his motions for new trial or remittitur. He contends the plaintiff's proofs as to proximate cause were insufficient to raise a jury question and that the damage award was deficient in failing to show the percentage of lost chance attributable to his negligence, and, in any event, was excessive.
The background facts are essentially uncontroverted. From May 1974, plaintiff's decedent Miriam Roses had been, at least intermittently, a patient of defendant. On December 15, 1983 *216 and again on April 24, 1984, she visited him with complaints of a cough  a condition which he described as a non-productive cough. On neither date were chest x-rays taken. On March 20, 1985, she sought medical care at Christ Hospital emergency room. A chest x-ray taken at that time revealed the presence of a five centimeter tumor diagnosed shortly thereafter as a poorly differentiated adenocarcinoma  a form of lung cancer. An April 2, 1985, CAT scan showed the tumor to be six centimeters in diameter. A bone scan later that month, on April 19, 1985, disclosed that the cancer had metastasized to her rib. She received radiation and chemotherapy. She died June 8, 1987 of carcinomatous meningitis, a cancer in the spinal fluid that surrounds the brain and spinal cord.
Plaintiff's expert, Dr. Richard Robinson, an oncologist, testified that defendant's failure to take chest x-rays was a deviation from standard medical practice and that if such x-rays had been taken, both x-rays, or at worst the April 1984 x-ray, would have disclosed the presence of the tumor and led to a diagnosis of the lung cancer. He founded this opinion on a backward extrapolation of the 1985 tumor observation based upon a doubling rate which has been developed for Mrs. Roses' type of lung tumor.[1] He postulated a doubling rate of 100 days and concluded that the six centimeter tumor observed on April 2, 1985 would have been at least two centimeters in size in December 1983, some 500 days before. This, in his opinion, would have been visible on an x-ray if one had been taken at that time. He acknowledged that doubling rates are not precise but are found to lie within a range. In any event, he concluded, the tumor would certainly have been visible by Mrs. Roses' second visit to defendant in April 1984.

*217 I.
On appeal, defendant's contentions as to liability are not directed at the finding of negligence but to the proofs as to proximate cause as it related to the increased risk and ultimate injury. In this regard, Dr. Robinson opined that the diagnostic delay increased the chances of metastasis and decreased the chances of surgical intervention, but he was unable to quantify the changes or to express a view as to when the metastasis occurred. He could only say that the smaller the cancer, the less likely the metastasis; that it was less likely that metastasis had already occurred in April of 1984 and that she still had a chance of having a tumor that could have been receptible[2] at that time. Defendant contends these are essentially lay views  no more than common sense  and insufficient to support a finding of a causal relationship between the delayed diagnosis and the final result of the already existing lung cancer, a type of cancer with a substantial death rate. He argues that there is a dearth of evidence that the failure to perform the x-ray in April 1984 was a substantial factor in bringing about Mrs. Roses' ultimate harm  that there was no evidence to show that an earlier diagnosis would have made any difference.
In Battenfeld v. Gregory, 247 N.J. Super. 538, 546-547, 589 A.2d 1059 (App.Div. 1991), we examined the relevant law:
In a series of cases, our Supreme Court has held that in the context of medical malpractice, when there is evidence that the defendant's negligence increased the risk of harm to the plaintiff and that the harm was in fact sustained, it becomes a jury question whether or not that increased risk constituted a substantial factor in producing the injury. The Court reasoned that the difficulties of identifying, defining and proving injury in some malpractice cases justify the use "of a standard of causation that is more flexible than that used in conventional tort claims." This flexible standard apparently applies to all medical malpractice cases in which there is evidence that the defendant's negligence increased the risk of the occurrence of the ultimate eventuating harm by failing to arrest the patient's downward medical course. *218 This approach reflects the emerging pattern of decisions on this issue in other jurisdictions and has also been the subject of scholarly comment.
The substantial factor test of causation requires the jury to determine whether the deviation, in the context of the patient's preexistent condition, was sufficiently significant in relation to the eventual harm to satisfy the requirement of proximate cause. [Citations omitted]
Although Dr. Robinson was unable to quantify the harm done to Mrs. Roses by the delayed diagnosis, his testimony was clear that as a matter of medical probability the diagnosis was delayed by at least eleven months and that this delay increased the risk that she would lose the opportunity for treatment of the cancer at an earlier stage and before it had metastasized.[3] When diagnosed in March 1985, Mrs. Roses was stage four, the tumor could not be surgically treated, and her prognosis was very poor. Dr. Robinson was unable, because of the lack of earlier x-rays, to express an opinion as to just when Mrs. Roses' cancer metastasized but he did express an opinion, as a matter of medical probability, that the delay increased the risk that her malignancy would metastasize before it was treated; that her condition would advance to a higher stage before treatment and thus decrease her chances of survival. Thus, in short, he expressed an opinion that, within a reasonable degree of medical probability, defendant's negligence in failing to take an x-ray increased the risk of harm posed by the existing malignancy. See Scafidi v. Seiler, 119 N.J. 93, 108, 574 A.2d 398 (1990). This was sufficient to create a jury question whether the increased risk was a substantial factor in producing the ultimate result, ibid., and, if accepted by the jury, to support the jury's verdict.

*219 II.
Defendant's remaining contentions as to the damages are clearly without merit. As to the denial of a remittitur, see Baxter v. Fairmont Food Co., 74 N.J. 588, 596-598, 379 A.2d 225 (1977). The effect of Scafidi v. Seiler, supra, on damages, that is to say, the limitation of damages to reflect the lost chance attributable to the defendant's negligence, id., 119 N.J. at 112-113, 574 A.2d 398, was explicitly made prospective only. Id. at 114, 574 A.2d 398.[4]
Affirmed.
NOTES
[1] Dr. Robinson testified that studies of x-rays of patients with tumors in their lungs have enabled calculations about the doubling time of the tumor, i.e. the time it takes for the tumor to double in size. Defendant's oncologist Dr. David Sharon employed the same principle in his testimony.
[2] Capable of receiving treatment.
[3] As part of a diagnosis oncologists divide the progress of cancer into four stages. Stage one is the earliest. Stage two means that the cancer has spread to a few lymph nodes. Stage three means the cancer has spread to a number of lymph nodes. Stage four means the cancer has metastasized, i.e. spread to another organ. The prognosis becomes less optimistic with increasing stages. See Evers v. Dollinger, 95 N.J. 399, 409, 422-428, 471 A.2d 405 (footnotes) (1984).
[4] This principle was reaffirmed in Lanzet v. Greenberg, 126 N.J. 168, 188, 594 A.2d 1309 (1991).