277 N.J. Super. 302 (1994)
649 A.2d 875
JERRY FISCHER, ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF RACHEL FISCHER, DECEASED, PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
ARTHUR T. CANARIO, M.D., DEFENDANT-APPELLANT-CROSS-RESPONDENT, AND NORMAN MAGID, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1994.
Decided November 21, 1994.
*304 Before Judges PETRELLA, BROCHIN and CUFF.
Peter A. Green argued the cause for appellant-cross-respondent (Sachs, Maitlin, Fleming, Greene & Wilson, attorneys; William H. Michelson, of counsel and on the brief).
Thomas R. Chesson argued the cause for respondent-cross-appellant (Porzio, Bromberg & Newman, attorneys; Mr. Chesson, of counsel; William A. Krais, on the brief).
John D. North argued the cause for defendant-respondent Norman Magid, M.D. (Mackenzie, Welt, Maher, North & Weeks, attorneys; Mr. North, on the letter brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
In June 1987, Rachel Fischer, plaintiff's decedent, was diagnosed as suffering from metastatic lung cancer. She underwent radiation therapy and two cycles of chemotherapy. As the result of her condition and the therapy to which she submitted herself, she suffered a loss of appetite, severe nausea, and the loss of all of her hair. She experienced anemia and general weakness. Ultimately, she suffered from brain seizures, she had her kidney *305 removed, and she lapsed in and out of a coma until she died on February 16, 1988. Her suffering was exacerbated by the fact that she was a holocaust survivor, and the circumstances of her cancer and her treatment, including the loss of her hair, caused her to relive her concentration-camp experiences.
Plaintiff is Mrs. Fischer's administrator ad prosequendum and the administrator of her intestate estate. He sued defendants, Dr. Arthur T. Canario, M.D. and Dr. Norman Magid, M.D., for medical malpractice, alleging that, but for their negligence, Mrs. Fischer's cancer would have been discovered in October 1984. The parties stipulated, and the trial court informed the jury, that if the cancer had been diagnosed at that time, Mrs. Fischer would have had a fifty percent chance of recovery.
The jury found that Dr. Canario, but not Dr. Magid, had been negligent. The verdict in Dr. Magid's favor is uncontested. The evidence presented at trial showed the following facts relevant to the negligence of Dr. Canario.
Mrs. Fischer, who was then 61 years old, went to the emergency room of the Newark Beth Israel Medical Center at 12:45 a.m. on October 11, 1984. She was treated there by Dr. Canario, an orthopedic surgeon, who examined an x-ray of her shoulder, diagnosed her injury as a fracture, applied a sling, administered medication for her pain, and told her to go home and to make an appointment for a follow-up visit. Mrs. Fischer asked to be admitted to the hospital for the night because there was no one else home at her residence. Dr. Canario reluctantly agreed and she was admitted. On the hospital records, he was listed as her attending physician, although he did not treat her at the hospital after her admission. Mrs. Fischer left the hospital the morning after her arrival.
Pursuant to what was then the unvarying procedure for a patient being admitted to the hospital, her chest was x-rayed. The radiologist's report attached to the x-ray indicated a probable tumor. But the report did not come to Dr. Canario's attention.
*306 In accordance with hospital procedures, he was required to sign her chart because he was listed as her attending physician. He did so approximately a week after Mrs. Fischer's discharge from the hospital. He looked through the records attached to her chart, but did not see the x-ray or the radiological report. The evidence is not clear whether they were attached to her chart by that time. Probably, they were not. After he had signed Mrs. Fischer's chart, he examined her several times for her bone fracture, but said nothing to her about her probable tumor because he was unaware of it.
At trial, plaintiff presented the expert testimony of two physicians, Arnold Rubin, M.D., and Ira M. Roschelle, M.D. Dr. Rubin was qualified as an expert in the fields of oncology, hematology, immunology, and general medicine. Dr. Roschelle was an orthopedic surgeon. The substance of their testimony was that, according to the prevailing reasonable standard of medical care, a patient's attending physician was required to know what tests were performed on his patient and what the results were before he signed the patient's chart. They testified that if Mrs. Fischer had been treated in 1984, she would have had a fifty percent chance of a cure. Dr. Roschelle testified that because Dr. Canario had accepted the responsibility of acting as attending physician, his failure to review Mrs. Fischer's chest x-rays and to inform her of the probable tumor which they disclosed was a deviation from accepted medical practice and a substantial factor in causing her to lose the chance of a surgical cure that she would have had in October 1984.
The jury awarded plaintiff $96,687 for his decedent's survivorship claim, including a stipulated amount of $45,000 for medical expenses, and $37,544 for the wrongful death claim. Defendant Canario has appealed and plaintiff has cross-appealed.
Dr. Canario argues to us that a judgment notwithstanding the verdict should have been entered in his favor because the evidence failed to establish that, as an orthopedist treating a patient for a fracture, he had any duty to inform her about the *307 results of her chest x-ray. In evaluating this argument, we, like the trial court, must accept as true all the evidence which supports plaintiff's position and must accord him the benefit of all inferences which can reasonably be drawn from that evidence. If reasonable minds could differ about whether or not that evidence establishes plaintiff's prima facie case, Dr. Canario's motion for judgment was properly denied. Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969); Wagner v. Deborah Heart & Lung Ctr., 247 N.J. Super. 72, 77, 588 A.2d 860 (App.Div. 1991).
The standard of care by which Dr. Canario's conduct was properly tested in the present case was "the degree of care, knowledge and skill ordinarily possessed and exercised in similar situations by the average member of the profession practicing in his field." Buckelew v. Grossbard, 87 N.J. 512, 522, 435 A.2d 1150 (1981). The testimony of Dr. Rubin and Dr. Roschelle was more than adequate to warrant the jury's finding that Dr. Canario breached that standard of care and that his breach was a substantial factor in causing Mrs. Fischer to lose a fifty percent chance of recovery.
In Scafidi v. Seiler, 119 N.J. 93, 114, 574 A.2d 398 (1990), the Supreme Court held that, in a case like this where the effect of defendant's malpractice was to substantially reduce the chance of a cure, the jury would be asked to determine the likelihood, on a percentage basis, that the patient would have succumbed to her condition even with faultless care; then, "In the event of a jury verdict against defendant on liability and damages, the trial court will mold the verdict to limit defendant's liability to the value of the lost chance for recovery attributable to defendant's negligence." Ibid. In the present case, since the parties stipulated, in agreement with the expert testimony, that the failure to diagnose Mrs. Fischer's cancer in October 1984 caused her to lose a fifty percent chance of a surgical cure, Scafidi, if applicable, would require reducing plaintiff's $134,231 verdict to $67,116.
On receiving the jury's verdict in this case, the trial court ruled that Scafidi was applicable and reduced the verdict accordingly. *308 However, in response to a post-trial motion, the court reversed its initial ruling, held that Scafidi was not applicable, and reinstated the verdict for $134,231 with prejudgment interest. On appeal, Dr. Canario argues that if the verdict is sustained, it should be reduced to $67,116 because Scafidi is applicable.
The Supreme Court said in that case:
In view of the significant change in the law represented by our holding concerning the measure of damages, the effect and application of that holding, except with respect to this case and Olah v. Slobodian, 119 N.J. 119, 574 A.2d 411 (1990), also decided today, shall be prospective only. See Weinberg v. Dinger, 106 N.J. 469, 496, 524 A.2d 366 (1987).

Scafidi, supra, at 114, 574 A.2d 398.
The outcome of this case depends upon what the Scafidi Court meant by "prospective." The Supreme Court issued its Scafidi opinion on May, 24, 1990. In the present case, Dr. Canario acted negligently during October 1984; and plaintiff's cause of action for wrongful death accrued on February 16, 1988, the date of Mrs. Fischer's death. The complaint in this matter was filed April 17, 1989. Trial began March 18, 1993 and the judgment appealed from was entered on May 10, 1993. If Scafidi was intended to apply only to cases whose causes of action accrued after May 24, 1990, or only to cases commenced after that date, its measure of damages is inapplicable this case. If Scafidi was intended to apply to cases tried, decided and appealed after May 24, 1990, its measure of damages is applicable.
In deciding that Scafidi was inapplicable to this case, the trial judge relied on Roses v. Feldman, 257 N.J. Super. 214, 608 A.2d 383 (App.Div. 1992), a medical malpractice case in which this court declined to apply the Scafidi damage rule. We said in that case, "The effect of Scafidi v. Seiler, supra, on damages, that is to say, the limitation of damages to reflect the lost chance attributable to the defendant's negligence, id., 119 N.J. at 112-113, 574 A.2d 398, was explicitly made prospective only." Roses v. Feldman, supra, 257 N.J. Super. at 219, 608 A.2d 383. The plaintiff's cause of action in that case accrued before the date on which the Supreme Court issued its opinion in Scafidi, and the case was probably *309 commenced before that date, but we cannot tell when the case was tried and decided. Roses is therefore not significant precedent for a case like the present one which was tried and decided after the Scafidi opinion was issued.
Lanzet v. Greenberg, 126 N.J. 168, 594 A.2d 1309 (1991), also refers to the prospectivity of Scafidi. In that medical malpractice case, the original trial and a retrial took place before the Supreme Court's issuance of its Scafidi opinion on May 24, 1990. See Lanzet v. Greenberg, 243 N.J. Super. 218, 221, 222, 579 A.2d 309 (App.Div. 1990). The Supreme Court opinion in Lanzet reviews the decision of this court rendered after the second trial. A reference to Scafidi in the majority opinion reads:
It was incorrect to ask the jury whether all of the harm that befell the patient was attributable to the physician-defendants. The correct instruction, not sought by the parties, was one that would require the jury to determine whether the physicians' neglect increased the risk of harm to the patient and whether that increased risk was a substantial factor in producing her injuries. Evers v. Dollinger, supra, 95 N.J. 399, 471 A.2d 405. We have the inestimable benefit of hindsight in assessing the merits of this case. In our 1990 decisions in Scafidi v. Seiler, supra, 119 N.J. 93, 574 A.2d 398, and Olah v. Slobodian, supra, 119 N.J. 119, 574 A.2d 411, we prospectively limited recovery in such circumstances to the value of the "lost chance" attributable to the physician's neglect.

Lanzet v. Greenberg, supra, 126 N.J. at 188, 594 A.2d 1309.
Criticizing the majority in Lanzet for ignoring Scafidi's requirement of prospectivity, Justice Pollock's dissent implies that the Court made the lost chance measure of damages applicable to the retrial which it ordered. Id. at 206-207, 594 A.2d 1309. However, the majority opinion does not provide us with clear guidance on the meaning of Scafidi's prospectivity rule. We must resort to our own exegesis of the Scafidi text.
For the prospective effect of its damage rule, Scafidi cited Weinberg v. Dinger, supra, a case which abolished the immunity of private water companies from negligence liability. Weinberg cited Merenoff v. Merenoff, 76 N.J. 535, 560, 388 A.2d 951 (1978), for the same principle, similarly expressed. Merenoff, which abrogated the interspousal immunity for domestic accidents, cited Darrow v. Hanover Township, 58 N.J. 410, 420, 278 A.2d 200 (1971). Darrow held that the rule of Immer v. Risko, 56 N.J. 482, *310 267 A.2d 481 (1970), which abrogated interspousal immunity in cases arising out of automobile accidents, would be applied prospectively. Darrow was explicit about the meaning of its ruling. It held that the Immer rule "will be available only to persons suffering injuries in automobile accidents occurring after ... the date Immer was decided." Darrow v. Hanover Township, supra, 58 N.J. at 420, 278 A.2d 200. From this history of the prospectivity rule announced in Scafidi, we infer that the prospective application of its damage rule was intended to apply only to causes of action which accrued after the date the Supreme Court issued its Scafidi opinion.[1] The trial court therefore properly declined to apply it to the present case.
Plaintiff has cross-appealed from the judgment, contending that the trial court's denial of his request for an "ultimate outcome charge" was prejudicial error. He contends that the court should have instructed the jury that it would reduce their verdict by half because the parties had stipulated that the delay in diagnosing Mrs. Fischer's cancer deprived her of a fifty percent chance of recovery.
We disagree with this contention. We assume that in a case to which the Scafidi measure of damages is applicable, the court should give the jury an "ultimate outcome" charge. See New Jersey Civil Model Jury Charges (4th ed. 1992) ¶ 5.36E. However, we have determined that that measure of damages is inapplicable to the present case. The jury charge in this case, when read as a whole, clearly instructs the jury to award plaintiff the entire amount of the damages to which he is entitled. There is nothing about the charge which supports plaintiff's argument that it may have led the jury to reduce Mrs. Fischer's compensation by half before returning its verdict.
*311 The judgment appealed from is therefore affirmed in all respects.
NOTES
[1] We emphasize that we have been attempting only to interpret the prospectivity rule announced in Scafidi. Because the Supreme Court declared that Scafidi should be applied only prospectively, we do not consider ourselves free to decide on policy grounds whether or not it should be applicable to a medical malpractice case like the present one.