815 A.2d 1005 (2003)
357 N.J. Super. 474
George SEEWARD, Plaintiff-Appellant,
v.
INTEGRITY, INC., (improperly identified as P.O.R.T. House); Correctional Medical Services; Dr. Parks; Dr. Desai; Miss Robinson, R.N.; Adrienne Borst; Carol Holt; Dr. Robinson; Dr. James Neal; Joseph Sweeney[1], Defendants-Respondents. and
New Jersey State Department Of Corrections; Scott Faunce, Warden Of Bayside Prison; Terrance Moore, Warden Of East Jersey State Prison; Roy Hendricks, Warden New Jersey State Prison; and Dr. Carlino, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted January 7, 2003.
Decided February 18, 2003.
*1007 Clifford N. Kuhn, Jr., Edison, for appellant.
Fitzpatrick, Reilly, Supple & Gaul, for respondents Integrity, Inc., improperly identified as P.O.R.T. House and Joseph Sweeney (Richard Wischusen, of counsel, New Providnce; Ronald Citrenbaum, on the brief, Bound Brook).
Holtzman & McClain, for respondents Correctional Medical Services, Inc., Dr. Parks, Adrienne Borst, Carol Holt, Dr. Robinson, Dr. James Neal and Dr. Desai (Stephen D. Holtzman, of counsel, Cherry Hill; Jeffrey S. McClain, on the brief, Atlantic City).
Before Judges SKILLMAN, CUFF and WINKELSTEIN.
*1006 The opinion of the court was delivered by WINKELSTEIN, J.A.D.
In this appeal plaintiff George Seeward challenges multiple summary judgment orders dismissing his complaint as to all defendants. Seeward was injured in October 1997 while serving a state prison term. At the time, he was assigned to a halfway house, operated by defendant Integrity, *1008 Inc., which trades as P.O.R.T. House.[2] Seeward claimed the Integrity defendants, the New Jersey State Department of Corrections (DOC), wardens of various correctional institutions, Correctional Medical Services, Inc. (CMS), which provides medical services for prisoners on behalf of the State, and the medical care providers who attended to Seeward, were either negligent or violated plaintiff's constitutional rights by failing and refusing to properly treat his injuries.
The Law Division dismissed plaintiff's negligence claim against the Integrity defendants based on the Charitable Immunity Act, N.J.S.A. 2A:53-7; and dismissed plaintiff's constitutional claims against those defendants on the grounds that plaintiff failed to demonstrate defendants' "deliberate indifference" to his medical problems. The Law Division also dismissed plaintiff's claim of constitutional violations against CMS and its medical providers (the CMS defendants) based on plaintiff's failure to supply an affidavit of merit.[3]
We affirm the dismissal of the negligence and constitutional claims against the Integrity defendants. The Integrity defendants are immunized against the negligence claims under the Charitable Immunity Act; and plaintiff failed to prove a prima facie case of deliberate indifference to his medical needs to support his constitutional claim against those defendants. However, we reverse summary judgment dismissing plaintiff's constitutional claims against the CMS defendants based on plaintiff's failure to supply an affidavit of merit.[4] We hold that an affidavit of merit is not required to establish a cause of action to vindicate a federal constitutional right, even if that right arises out of medical treatment furnished to an inmate by licensed medical providers.

I
After plaintiff was convicted of manslaughter for causing a fatal accident while driving under the influence in 1994, the court sentenced him to a term of eight years with a four-year period of parole ineligibility. On February 21, 1997, plaintiff was assigned to P.O.R.T. House, a halfway house in Newark. P.O.R.T. House is a "therapeutic community which teaches its residents a way to live, interact and function in society." The P.O.R.T. program "treats and educates pre-released prisoners ... as a halfway stop between prison and release into society." As part of the P.O.R.T. program, "pre-released prisoners are selected for various crews to perform tasks on site."
Plaintiff is a carpenter. While a resident at P.O.R.T. House, he participated in various remodeling and renovating projects. He stored his tools and lumber in a shed in the P.O.R.T. House backyard. On October 5, 1997, while sliding a plywood *1009 panel needed to complete an on-site project out of the shed, plaintiff's heel hit a lip on the door threshold and he fell. With complaints of serious back pain, one-half hour later he was taken by ambulance to St. Michael's Hospital, and later transferred to the hospital ward at East Jersey State Prison.
While hospitalized at St. Michael's, an x-ray of his low back was normal, but a CAT scan found a "focal, lateral disc herniation present at L3-4 on the right." An MRI of the lumbar spine revealed "degenerative [disc] disease at the L4-5 level with narrowing of the intervertebral disc ... [,]" but did not disclose a "focal disc herniation." The doctor who performed the MRI opined that plaintiff had degenerative disc disease at L4-5, but no disc herniation.
Staff at St. Michael's and East Jersey State Prison treated plaintiff with pain and anti-inflammatory medication. While at St. Michael's, plaintiff was given a prescription for Voltaren, a pain reliever, and Flexeril, a muscle relaxant. The prescription was not, however, filled at St. Michael's or East Jersey State Prison.
Upon discharge from East Jersey State Prison on October 20, 1997, plaintiff returned to P.O.R.T. House at approximately 1:15 p.m. Approximately one-half hour later, at 1:45 p.m., he signed out of P.O.R.T. House, indicating that he was going to work. However, instead of going to work he went to St. Michael's to pick up his medical records. The following day, he again signed out on the premise that he was going to work, but instead he went to Edison Imaging to obtain a second opinion as to his medical condition, which confirmed a disc herniation at L4-5.
According to plaintiff, he was in "a lot of pain" when he returned to P.O.R.T. House and constantly requested medical treatment which was not provided. When asked if he complained to anyone about his medical condition before signing out for work on the day he returned to P.O.R.T. House, plaintiff said he complained to "[w]hoever was there." He also stated, however, that on both the first and second days back in P.O.R.T. House, he chose not to tell the P.O.R.T. House staff that he wanted medical treatment, because "they knew I needed medical treatment." He also said he failed to disclose his need for medical treatment because he was concerned about being transferred back to prison. He said: "When a guy gets locked up for needing medical treatment, he ain't [sic] going to tell the people that he wants the medical treatment now because he's just going to end up back in prison."
Defendant knew that to receive medical attention while at P.O.R.T. House, he needed to "drop a medical slip" to let staff know of his need. He admitted that he failed to do so, because he "always spoke to people verbally" about his pain.
Sometime after his return to P.O.R.T. House, plaintiff explained to Sweeney and another staff member that no action had been taken to fill the prescription he received from St. Michael's. As a result, pursuant to DOC procedures, the P.O.R.T. House staff attempted to have his prescription filled through the DOC on two dates, October 22 and October 24, 1997. However, the DOC failed to respond to the P.O.R.T. House staff's requests.
On October 27, 1997, plaintiff claimed his "legs gave out" and he was unable to walk. The P.O.R.T. House staff called an ambulance and had him taken to the hospital. He was subsequently taken to Rahway State Prison and then to the DOC Central Reception and Assignment Facility in Trenton, where he received medication. Plaintiff never returned to P.O.R.T. House and was released from the custody of the DOC on April 1, 1999.
*1010 After his release, plaintiff returned to work as a carpenter with no restrictions. On July 9, 1999, while picking up roofing material at work, he experienced pain, was diagnosed with a herniated disc, and subsequently underwent surgery.

II
First, we turn to plaintiff's appeal of the order dismissing his negligence claims against the Integrity defendants based upon the Charitable Immunity Act. Plaintiff's challenge to that decision on the grounds that he was a volunteer and not a beneficiary of P.O.R.T. House's charitable services completely disregards the undisputed evidence that plaintiff, a prisoner at the time, was injured while engaged in a P.O.R.T. House education and treatment program. Plaintiff's arguments on this issue are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(A) & (E).

III
We next address plaintiff's argument that the motion judge erroneously dismissed his constitutional claims brought pursuant to the Civil Rights Act, 42 U.S.C.A. § 1983, based upon his failure to supply an affidavit of merit. The gravamen of plaintiff's claim against the CMS defendants is that they subjected him to cruel and unusual punishment by acting deliberately indifferent to his complaints of pain. In other words, he alleges a violation of rights secured by the Eighth Amendment. See West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 49 (1988); Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L. Ed.2d 251, 260 (1976).
Deliberate indifference to the serious medical needs of a prisoner constitutes the " `unnecessary and wanton infliction of pain,' which is proscribed by the Eighth Amendment." Estelle, supra, 429 U.S. at 104, 97 S.Ct. at 291, 50 L. Ed.2d at 260 (quotation omitted). An inmate may prevail in an Eighth Amendment claim by proving that a government actor-in this case the Integrity and CMS defendants acting on behalf of the Stateobligation to the inmate by deliberately failing to provide him with proper medical care. Estelle, supra, 429 U.S. at 103, 97 S.Ct. at 290, 50 L. Ed.2d at 259. Plaintiff argues that application of the affidavit of merit statute to this type of claim raises an improper barrier to the vindication of his federal constitutional rights.
The affidavit of merit statute says that
[i]n any action for personal injuries, ... resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, [within a specific time frame] provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

[N.J.S.A. 2A:53A-27.]
The primary purpose of the statute "is `to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily be identified at an early stage of litigation.' " Cornblatt, P.A. v. Barow, 153 N.J. 218, 242, 708 A.2d 401 (1998) (quoting In re Petition of Hall, 147 N.J. 379, 391, 688 A.2d 81 (1997)). The failure to file an affidavit of merit is a failure to state a cause of action. N.J.S.A. 2A:53A-29. Thus, the failure to comply with the affidavit of merit statute may bar a state law claim for personal injuries for a *1011 doctor's professional negligence. However, compliance with the affidavit of merit statute is not a prerequisite for a federal civil rights action against a doctor who is deliberately indifferent to his or her patient's medical needs.
Section 1983, although not itself a source of substantive rights, provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443, 454 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433, 442 n. 3 (1979)). Section 1983 provides an independent cause of action to any person deprived of constitutional rights under color of law. As a federal statute, section 1983 "is entitled to the protection of the Supremacy Clause, Article VI, of the United States Constitution, which precludes state laws that thwart the purposes of federal legislation." Fuchilla v. Layman, 109 N.J. 319, 331, 537 A.2d 652 (1988).
In Fuchilla, the Court determined that the notice provisions of the Tort Claims Act, N.J.S.A. 59:8-8, 9, did not apply to causes of action pursuant to section 1983. Ibid. Justice Pollack, speaking for the Court, said:
Barring a section 1983 claim for failure to satisfy the notice provisions of the [Tort Claims] Act would permit state legislation to deny a federal right in violation of the Supremacy Clause. Accordingly, we hold that the notice provisions of the [Tort Claims] Act do not apply to plaintiff's section 1983 claims. (citations omitted). [Ibid.]
Under this same analysis, the affidavit of merit statute is not applicable to plaintiff's section 1983 claim. State legislation may not impede an individual's right to allege a federal constitutional violation. Through his section 1983 action, plaintiff claims the CMS defendants, acting on behalf of the State, were deliberately indifferent to his medical needs. Applying the affidavit of merit statute to this claim would place a state-constructed barrier between plaintiff and his federal rights.
The Supremacy Clause of the United States Constitution imposes upon state courts a constitutional duty "to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected." Garrett v. Moore-McCormack, Co., 317 U.S. 239, 245, 63 S.Ct. 246, 251, 87 L.Ed. 239, 244 (1942). "A state law that conditions [a] right of recovery [under a federal civil rights action] upon compliance with a rule designed to minimize governmental liability, ... is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law." Felder v. Casey, 487 U.S. 131, 153, 108 S.Ct. 2302, 2314, 101 L.Ed.2d 123, 147 (1988). "Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right when that right is asserted in state court." Ibid.
Failure to file an affidavit of merit is a failure to state a cause of action. Plaintiff's unfettered right to seek relief for an alleged Eighth Amendment violation may not be conditioned on compliance with the statute. Compliance with the affidavit of merit statute would defeat, on the basis of state law, his entitlement to pursue a federal claim. Therefore, we reverse the motion judge's order dismissing plaintiff's complaint against the CMS defendants based upon his failure to supply an affidavit of merit, and remand to the Law Division to address plaintiff's deliberate indifference claim against these defendants which remains unresolved.

IV
We next determine whether plaintiff established a prima facie showing of deliberate *1012 indifference so as to withstand the Integrity defendants' summary judgment motion to dismiss plaintiff's constitutional claims. The motion judge concluded that plaintiff failed to do so. We agree.
The government has an obligation to provide medical care for prisoners. Estelle, supra, 429 U.S. at 103, 97 S.Ct. at 290, 50 L.Ed.2d at 259. To establish a deprivation of his constitutional rights based on defendants' failure to treat his injuries, plaintiff must demonstrate that defendants showed a "deliberate indifference to [his] serious medical needs." Id., 429 U.S. at 104, 97 S.Ct. at 291, 50 L.Ed.2d at 260. A serious medical need has been defined as " `one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.' " Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987) (quoting Pace v. Fauver, 479 F.Supp. 456, 458 (D.N.J.1979), aff'd, 649 F.2d 860 (3d Cir.1981)), cert. denied, 486 U.S. 1006, 108 S.Ct. 1731, 100 L. Ed.2d 195 (1988). Although mere allegations of malpractice do not raise issues of constitutional dimension, Estelle, supra, 429 U.S. at 106 n. 14, 97 S.Ct. at 292 n. 14, 50 L.Ed.2d at 261 n. 14, if knowledge of the need for medical care is accompanied by an intentional refusal to provide that care, or medical treatment is delayed for nonmedical reasons, deliberate indifference has been established. Lanzaro, supra, 834 F.2d at 346.
Prison authorities "are accorded considerable latitude in the diagnosis and treatment of prisoners," Durmer v. O'Carroll, 991 F.2d 64, 67 (3rd Cir.1993), but if denying particular treatment results in an unnecessary and wanton infliction of pain, the medical need is sufficiently serious for Eighth Amendment protection. Estelle, supra, 429 U.S. at 103, 97 S.Ct. at 290, 50 L.Ed.2d at 259; Lanzaro, supra, 834 F.2d at 347. Generally, however, a court will not find deliberate indifference if the inmate has been offered some level of medical care. Christy v. Robinson, 216 F.Supp.2d 398, 413 (D.N.J.2002).
Here, plaintiff has not made a prima facie showing of deliberate indifference by the Integrity defendants. His constitutional claim against these defendants is for his lack of treatment during his seven-day period of confinement at P.O.R.T. House after he returned from East Jersey State Prison on October 20, 1997. Although plaintiff stated he complained of his pain to anyone who would listen, upon plaintiff's return to P.O.R.T. House, he gave the P.O.R.T. House staff the impression he was well enough to go to work. The record shows that within one-half hour of plaintiff's return to P.O.R.T. House, he signed out indicating he was going to work. On the second day after his return, he signed out for the same reason. Although plaintiff was out obtaining his medical records and a second medical opinion of his injuries instead of working, plaintiff did not communicate the real reasons for his signing out. In neither case did he explain to the P.O.R.T. House staff that he was suffering from a serious medical condition that needed attention.
Also, plaintiff never executed the appropriate medical forms to obtain medical attention while at P.O.R.T. House. He was aware of the procedure which required a written request for medical attention, but he failed to comply with that procedure.
Additionally, and significantly, while he was at P.O.R.T. House, the staff attempted to fill the prescription plaintiff obtained at St. Michael's. Plaintiff testified that he was given a prescription for pain medication and muscle relaxants *1013 while at St. Michael's, which was not filled either there or while he was in the hospital ward at East Jersey State Prison. Upon returning to P.O.R.T. House, the staff, following DOC standard procedure, made an effort to have the prescription filled. This attempt by the P.O.R.T. House staff to obtain pain medication for plaintiff effectively negates his claim that the P.O.R.T. House staff was deliberately indifferent to his complaints of pain. Rather than demonstrating the type of indifference necessary to establish a violation of the Eighth Amendment, the staff's attempts to obtain pain medication for plaintiff, though unsuccessful, evidence a willingness to respond to his complaints. Moreover, once plaintiff's condition progressed to the point where he claimed he was unable to walk, the P.O.R.T. House staff immediately called an ambulance and plaintiff was taken to the hospital. At the hospital, no treatment was rendered to plaintiff aside from providing him with pain medication, which was what the P.O.R.T. House staff attempted to obtain for plaintiff before he was hospitalized.
To determine whether there exists a genuine issue of fact so as to defeat a motion for summary judgment, the court must decide whether "the competent evidential materials presented, when viewed in the light most favorable to the nonmoving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). We agree with the motion judge that there exists no genuine issue of fact concerning the question of deliberate indifference which requires submission to a jury. Plaintiff's general complaints of pain notwithstanding, the Integrity defendants attempted to obtain for plaintiff a prescription for pain medication and muscle relaxants, and when plaintiff's symptoms became severe, they sent him by ambulance to the hospital. No reasonable fact-finder could conclude that the Integrity defendants were deliberately indifferent to plaintiff's medical care. The constitutional claims against the Integrity defendants were therefore properly dismissed.
Affirmed in part and reversed and remanded in part.
NOTES
[1] The names of defendants DeSai, Robinson, Borst and Neal are spelled differently in various documents in the record. We have used the spelling found in these defendants' answer filed in the Law Division.
[2] Defendant Joseph Sweeney is the director of P.O.R.T. House. Both Integrity, Inc. and Joseph Sweeney shall be jointly referred to in this opinion as the "Integrity defendants."
[3] All claims against the DOC and the wardens were dismissed by stipulation. Plaintiff's claims against Dr. Carlino, who filed his own answer, were dismissed by summary judgment. Although plaintiff named Dr. Carlino as a respondent and served his attorney with the Notice of Appeal and Case Information Statement, plaintiff did not brief the issues concerning Dr. Carlino, and accordingly, Dr. Carlino did not file a responsive brief. Because they were not briefed, the claims against Dr. Carlino are waived. See Soc'y Hill Condo. Ass'n v. Soc'y Hill Assoc., 347 N.J.Super. 163, 175-76, 789 A.2d 138 (App. Div.2002); Pressler, Current N.J. Court Rules, comment on R. 2:6-2 (2003).
[4] The CMS defendants, having been dismissed by reason of plaintiff's failure to file an affidavit of merit, never moved before the Law Division on the deliberate indifference issue.