841 A.2d 957 (2004)
366 N.J. Super. 570
Tymirah SCOTT-NEAL, an infant, by her guardian ad litem Toya SCOTT, Administratrix Ad Prosequendum of the Estate of Tyrone Neal, Plaintiffs-Appellants,
v.
NEW JERSEY STATE DEPARTMENT OF CORRECTIONS and Middlesex County Department of Adult Corrections, Defendants-Respondents, and
Correctional Medical Services, Inc., Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted January 27, 2004.
Decided February 19, 2004.
*959 Green Lucas Savits & Marose, attorneys for appellants (Michael J. Reimer, South Orange, and Walter Lucas, of counsel; Mr. Reimer, on the brief).
Powell, Birchmeier & Powell, attorneys for respondents (James R. Birchmeier, on the brief).
Before Judges CIANCIA, ALLEY and PARKER.
*958 The opinion of the court was delivered by CIANCIA, J.A.D.
Plaintiffs appeal a summary judgment dismissing their complaint against defendants, the New Jersey Department of Corrections (DOC), and the Middlesex County Adult Corrections Center (MCACC). In a previous appeal, we dismissed defendant Correctional Medical Services, Inc. (CMS) from the litigation. Neal v. New Jersey State Dep't of Corr., A-3885-01T3, 2002 WL 31741497 (App.Div. October 24, 2002). We now affirm in part and reverse in part.
Tyrone Neal was a state prison inmate incarcerated at the East Jersey State Prison in Rahway. In February 1997 he was admitted to St. Francis Medical Center in Trenton and diagnosed with, among other things, "Paroxysmal Nocturnal Hemoglobinuria with hemolytic episode" (PNH). The treatment for PNH consists of administering proper dosages of prednisone. The only potential cure is a bone marrow transplant. The condition can be fatal if not properly treated.
Neal was discharged from St. Francis Hospital on March 4, 1997. Prednisone was prescribed and administered. On June 23, 1997, Neal was transferred from state prison to MCACC to await sentencing on a separate charge. He filled out a medical history form stating he had PNH and a separate physician's assessment noted his condition. The record is not entirely clear whether plaintiffs claim in part that Neal was denied prednisone while in state prison. We note a July 28, 1997 letter from Neal to Toya Scott wherein Neal asserted that he was taking prednisone "up until May and that was when Rahway stop[ped] giving me the medication." Neal allegedly made multiple requests for treatment while in the MCACC infirmary, but did not receive his necessary medication. Another inmate said the "officers ... told him that he was faking it." On August 1, 1997, Neal complained of abdominal pain and nausea. He was seen by a doctor and placed on bed rest. The next morning Neal was found dead in his bed. The cause of death was listed as "Anemia and Hemoglobinemia" and "Paroxysmal Nocturnal Hemoglobinemia."
Neal's daughter, plaintiff Tymirah Scott-Neal, and his estate brought a complaint against both agencies and CMS, the private entity that provided contractual medical services to the institutions. No individual doctors or agency personnel were named as defendants, even though the complaint contained references to specific persons.
The first three counts of the complaint alleged a survivorship action pursuant to N.J.S.A. 2A:15-3. The fourth count alleged a wrongful death action pursuant to N.J.S.A. 2A:31-1 to -6. Counts five and six alleged medical malpractice against "John Doe" treating physicians. Count seven asserted claims under 42 U.S.C.A. § 1983 against the agencies, but not against CMS.
*960 On motions for summary judgment the complaint was dismissed in its entirety as to the agencies. CMS was held in on a vicarious liability theory but this court, on motion for leave to appeal, reversed that order and dismissed CMS from the litigation. On the record presented, we concluded that CMS was essentially akin to an employment agency and did not exercise actual or apparent authority over the doctor's practice of medicine in the institutions.[1]Neal v. New Jersey State Dep't of Corr., supra, A-3885-01T3.
The trial court also denied a cross-motion by plaintiffs seeking to shift to defendants the burden of proving what medications were actually administered to decedent.
The trial court's decision to dismiss the § 1983 actions against the agencies was clearly correct. Neither the State nor a local governmental entity is a "person" within the meaning of 42 U.S.C.A. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 62-70, 109 S.Ct. 2304, 2307-2312, 105 L.Ed.2d 45, 52-57 (1989). It is true that local governments are not protected by the Eleventh Amendment and under certain circumstances can be subject to suit under § 1983. Id. at 70, 109 S.Ct. at 2312, 105 L.Ed.2d at 57. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-2038, 56 L.Ed.2d 611, 638 (1978). Those circumstances, however, are not here present. There has been no showing of a policy, practice, or custom demonstrating deliberate indifference or even a single policy decision or incident that could be said to have been undertaken by an individual with final policy-making authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 481-484, 106 S.Ct. 1292, 1299-1300, 89 L.Ed.2d 452, 464-465 (1986). Accordingly, that portion of the summary judgment dismissing plaintiffs' § 1983 claims is affirmed.
Plaintiffs' negligence claims stand on a different footing. The trial court's reasons for dismissing those counts of the complaint were not well articulated. It apparently believed that the agencies, having contracted and relied on CMS, discharged their obligations to the inmates. Not so. "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody...." West v. Atkins, 487 U.S. 42, 56, 108 S.Ct. 2250, 2259, 101 L.Ed.2d 40, 54 (1988) (holding that a doctor who supplies prison medical services as an independent contractor can be sued as a "person" under § 1983); accord DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). This, of course, is an exception to the general rule that one who hires an independent contractor is not liable for the negligence of that contractor. Baldasarre v. Butler, 132 N.J. 278, 291, 625 A.2d 458 (1993). Providing adequate healthcare to inmates is a matter of federal constitutional compulsion.
The fact that the State employed respondent pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other "state employees" does not alter the analysis. It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a *961 physician is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner. Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.
[West, supra, 487 U.S. at 55-56, 108 S.Ct. at 2259, 101 L.Ed.2d at 53-54 (footnote omitted).]
In terms of medical malpractice, plaintiffs were required to show within a reasonable degree of medical certainty (1) that the defendants' negligence increased Neal's risk of harm from the preexistent condition; and (2) that the increased risk of harm was a substantial factor in causing the complained-of injury. Gardner v. Pawliw, 150 N.J. 359, 375-379, 696 A.2d 599 (1997); Scafidi v. Seiler, 119 N.J. 93, 108-109, 574 A.2d 398 (1990).
We are satisfied plaintiffs made a sufficient showing to survive a summary judgment motion on the negligence claims. Plaintiffs' expert doctor gave a report that said, among other things, Neal's doctors were adequately informed of his condition, treatment information was available in standard medical textbooks, Neal needed prednisone that was not given to him, and the dosage administered on July 29, 1997 was "very inadequate." The doctor also opined that there was a deviation from the standard of medical care while Neal was at MCACC. An affidavit of merit was supplied by the same physician. Contrary to defendants' assertions, it was not necessary to also offer an opinion on the conduct of the agencies. In fact, the trial court indicated it found the expert's report sufficiently detailed on the issues of standard of care and deviation. The dismissal of the negligence claims was based on the conclusion that CMS was an independent contractor. As we previously indicated, the agencies cannot delegate the responsibility for providing adequate inmate healthcare. West, supra, 487 U.S. at 56, 108 S. Ct. at 2259, 101 L.Ed.2d at 54; McCormick v. City of Wildwood, 439 F.Supp. 769, 776 (D.N.J.1977) ("[A] jailer's duty to provide reasonable medical care is non-delegable. This duty attaches as soon as a prisoner is placed under the jailer's custody."); Saint Barnabas Med. Ctr. v. Essex County, 111 N.J. 67, 74, 543 A.2d 34 (1988) ("As a matter of both state and federal law, defendant Essex County had an absolute duty to see that [the prisoner] received medical treatment for his injuries."); accord Medley v. North Carolina Dep't of Corr., 330 N.C. 837, 412 S.E.2d 654 (1992) (holding that the state has nondelegable duty to provide adequate medical services to inmates); Shea v. City of Spokane, 17 Wash.App. 236, 562 P.2d 264, 267-268 (1977), aff'd per curiam, 90 Wash.2d 43, 578 P.2d 42 (1978) (rejecting the city's contention that it was not liable for negligent medical treatment given jail inmate by independent-contractor doctor); cf. Marek v. Prof'l Health Servs., Inc., 179 N.J.Super. 433, 440-443, 432 A.2d 538 (App.Div.), certif. granted, 88 N.J. 470, 443 A.2d 691, appeal dismissed 93 N.J. 232, 460 A.2d 645 (1981) (holding that health care entity could not delegate to an independent medical contractor its duty of care in reading patient's x-ray).
We do, however, agree with the agencies that they are not subject to punitive damages. The Tort Claims Act specifically provides that "[n]o punitive or exemplary *962 damages shall be awarded against a public entity." N.J.S.A. 59:9-2c. The exceptions to this limitation are inapplicable to common law negligence claims.
Finally, we affirm the trial court's ruling that the burden to prove that Neal did or did not receive the prednisone prescribed for him is not on the defendants. This is not a question of proximate cause or damages where our courts have held that the burden under certain circumstances is modified to permit jury consideration or actually shifts to the defendant. See, e.g., Scafidi, supra, 119 N.J. at 101-104, 109-113, 574 A.2d 398; Fosgate v. Corona, 66 N.J. 268, 272-273, 330 A.2d 355 (1974). The factual issue of whether Neal received prednisone and in what dosage is plaintiffs' obligation to prove as part of the requirement that they show negligence that increased the risk of harm from a preexistent condition.
Affirmed in part; reversed in part. The matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] The present record indicates that perhaps not all relevant information was made available to this court when that decision was reached. Cf. Seeward v. Integrity, Inc., 357 N.J.Super. 474, 815 A.2d 1005 (App.Div.2003). We are not now asked to reconsider that decision and, of course, CMS is not a party to the present appeal.