**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1738-21

BERNO A. CHALET on behalf of
ELIAS N. CHALET, deceased,

     Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
STATE OF NEW JERSEY
DEPARTMENT OF
CORRECTIONS, MARCUS O.
HICKS in his official capacity as
COMMISSIONER of the STATE
OF NEW JERSEY DEPARTMENT
OF CORRECTIONS, JENNIFER
SHEAHAN in her official capacity
as DIRECTOR of the JAMES A.
HEMM HOUSE, JAMES A.
HEMM HOUSE, and URBAN
RENEWAL CORP.,
a/k/a URBAN "1",

     Defendants-Respondents.

_____

Submitted October 11, 2022 — Decided October 24, 2022

Before Judges Whipple, Mawla, and Smith.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4210-21.

Law Offices of Peter W. Till, attorneys for appellant (Peter W. Till and Louis J. Keleher, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent State of New Jersey (Sookie Bae-Park, Assistant Attorney General, of counsel; Niccole L. Sandora, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Berno A. Chalet, on behalf of decedent Elias N. Chalet, appeals from a November 19, 2021 order dismissing with prejudice claims against defendants the State of New Jersey; New Jersey Department of Corrections (DOC); Marcus O. Hicks, in his official capacity as commissioner of the DOC; and Jennifer Sheahan, in her official capacity as director of the James A. Hemm House, Urban Renewal Corp., for failure to state a claim. We affirm.

In 2017, Elias[1] pled guilty to second-degree bribery in official and political matters, N.J.S.A. 2C:27-2(c) and (d). Prior to his sentencing, Elias provided the court with four medical reports showing he was diagnosed with transient ischemic attacks, the medical equivalent of mini-strokes. He was

---

[1] We use Elias's first name because he shares a surname with his spouse. We intend no disrespect.

prescribed an anticoagulant and aspirin to prevent the chance of a major stroke. Elias's records showed his doctor recommended he visit a cardiologist and a neurologist to ensure a therapeutic degree of anticoagulation and that he should be monitored at least twice monthly. His doctor expressed concern whether the DOC could provide an adequate level of cardiac care and monitoring.

In July 2018, Elias was sentenced to five years in New Jersey State Prison with a two-year parole ineligibility period. Two years later, he was transferred to Urban Renewal Corp.,[2] a halfway house in Newark. Elias was a resident of Hemm House in March 2020, the outset of the COVID-19 pandemic. On April 5, 2020, he complained of COVID-like symptoms, resulting in his transfer to Northern State Prison, for evaluation by medical personnel. Given his condition, Elias was transferred to St. Francis Medical Center for further treatment the following day.

On April 10, 2020, Governor Murphy signed Executive Order No. 124, which established a process to grant temporary reprieves to certain at-risk inmates. In relevant part, the order detailed the procedures for the early release of incarcerated individuals, including priority for individuals with high-risk medical conditions, as determined by the DOC, in consultation with the New

---

[2] Urban Renewal Corp. was renamed the James A. Hemm House.

3        A-1738-21

Jersey Department of Health.  Although Elias was eligible for release, he passed away in the hospital from COVID-19 complications on August 20, 2020.

Plaintiff filed a thirty-five-count complaint, alleging defendants failed to promptly treat Elias for COVID-19 symptoms, and knowing his underlying medical condition, should have released him from Hemm House.  The complaint claimed defendants were collectively negligent and responsible for Elias' death.  Plaintiff asserted counts for:  Wrongful death; survival; loss of consortium; negligent entrustment, respondeat superior, and vicarious liability (negligence claims); funeral expenses; and civil rights violations.  The complaint attached: Elias's doctor's reports; three executive orders;[3] a Supreme Court consent order dated March 22, 2020;[4] and a May 14, 2020 news article discussing the high number of incidents of COVID-19 in New Jersey prisons.  Defendants moved to dismiss for failure to state a claim.

Judge Thomas R. Vena granted the motion in a written opinion.  He dismissed the wrongful death counts for lack of standing and further found the

---

[3]  Only Executive Order 124 is relevant here because it permitted Elias's release. The other two involved the Governor's declaration of a state of emergency and the statewide lockdown.

[4]  This order regarded the release of certain individuals serving sentences in county jail and was inapplicable to Elias who was serving a state prison sentence.

claims lacked merit. He found the tort claims underlying the survival counts, and resultant funeral expenses, barred on grounds of immunity. The judge dismissed the civil rights claim, finding defendants were not amenable to suit as persons under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2. The negligence claims were dismissed because the judge found defendants were not

> negligent in the handling of [Elias].
>
> While . . . [p]aintiff asserts . . . [Elias] should have been released from the . . . Hemm House . . . instead of being sent for medical treatment, . . . [Elias] was not eligible for furlough under the Supreme Court consent order at the time he contracted COVID-19. Once . . . [Elias] was eligible for furlough by [E]xecutive [O]rder[,] he was already admitted to the hospital. The [c]ourt . . . finds the decision to transfer . . . [Elias] to a prison from Hemm House was appropriate. The moving defendants followed the protocol in place, and made a decision to transfer . . . [Elias] to the prison after complaining of COVID-19 [symptoms] which included medical departments. Once examined[,] [Elias] was then transferred to St. Francis [M]edical Center.

As a result, the judge dismissed the survival action. He also dismissed the lack of consortium claims, reasoning they could not be maintained as an independent cause of action.

A-1738-21

Given the dismissal of the complaint, the judge denied plaintiff's motion to amend the complaint as moot. We granted plaintiff's motion for leave to appeal.

Plaintiff raises the following points on appeal:

> POINT I: THE SEPARATE CLAIMS BROUGHT PURSUANT TO THE [NJCRA] WERE ERRONEOUSLY DISMISSED.
>
> > A. THE PLAINTIFF DID NOT BRING CLAIMS PURSUANT TO 42 U.S.C. § 1983.
> >
> > B. THE NAMED DEFENDANTS REMAIN "PERSONS" AMENABLE TO SUIT FOR MONETARY DAMAGES PURSUANT TO THE [NJCRA].
>
> POINT II: [THE NEGLIGENCE] COUNTS . . . OF THE AMENDED COMPLAINT WERE DISMISSED IN ERROR.
>
> > A. THE MATTER WAS [PLED] WITH EXCRUCIATING SPECIFICITY AND VOLUMINOUS SUFFICIENT FACTS IN SUPPORT [OF] A PRIMA FACIE CASE OF NEGLIGENT ENTRUSTMENT.
> >
> > B. THE TRIAL COURT HEREINBELOW WAS IN ERROR IN ITS DECISION TO DISMISS THE PLAINTIFF'S CLAIMS FOR VICARIOUS AND/OR RESPONDEAT SUPERIOR LIABILITY, WHICH DECISION WAS REACHED

6

IMPROVIDENTLY, SUMMARILY AND PREMATURELY.

POINT III: PLAINTIFF'S WRONGFUL DEATH CLAIM WAS IMPROVIDENTLY, SUMMARILY AND PREMATURELY DISMISSED.

A. PLAINTIFF'S DECLARATION, AS THE ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF ELIAS N. CHALET, WILL PROCEED TO AMEND PURSUANT TO N.J.S.A. 2A:31-1.

B. THE TRIAL COURT HEREINBELOW FAILED TO RECOGNIZE THE INFANCY OF THIS MATTER AND OTHERWISE ERRONEOUSLY PERMITTED THE APPLICATION OF IMMUNITY AND THE WRONGFUL DISMISSAL OF THE PLAINTIFF'S WRONGFUL DEATH CLAIM.

C. THE TRIAL COURT HEREINBELOW WAS IN ERROR IN ITS[] PREMATURE, IMPROPER AND SUMMARY DISMISSAL OF THE PLAINTIFF'S CLAIMS FOR INADEQUATE MEDICAL CARE, NEGLIGENT ENTRUSTMENT IN THE FACE OF DETAILED ACCOUNTS AND GOOD AND SUFFICIENT BASIS FOR RECOVERY UNDER THE WRONGFUL DEATH ACT.

POINT IV: THE TRIAL COURT HEREINBELOW IMPROVIDENTLY, SUMMARILY AND

7

PREMATURELY DISMISSED THE WRONGFUL SURVIVAL ACTION.

POINT V: THE TRIAL COURT HEREINBELOW PREMATURELY, SUMMARILY AND IMPROPERLY DISMISSED AND ACCORDINGLY THE CLAIMS FOR PUNITIVE DAMAGES [BR]OUGHT PROPERLY REMAIN.

A. THE TRIAL COURT HEREINBELOW WAS IN ERROR WHEN IT SUMMARILY DISMISSED THE PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES WHEN DIRECTLY FACED WITH DETAILED ACCOUNTS OF VIOLATIVE CONDUCT AND CERTAINLY BEFORE THE CONDUCT OF DISCOVERY.

POINT VI: THE TRIAL COURT HEREINBELOW PREMATURELY, SUMMARILY AND IMPROPERLY DISMISSED THE CLAIMS FOR FUNERAL EXPENSES.

POINT VII: THE TRIAL COURT HEREINBELOW PREMATURELY, SUMMARILY AND IMPROPERLY DISMISSED COUNTS [FIFTEEN], [SIXTEEN], AND [SEVENTEEN] OF THE AMENDED COMPLAINT.

## I.

Appellate review of a trial court's ruling on a motion to dismiss is de novo. Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (citing Seidenberg v. Summit Bank, 348 N.J. Super. 243, 250 (App. Div. 2002)). "A

complaint should be dismissed for failure to state a claim pursuant to Rule 4:6-2(e) only if 'the factual allegations are palpably insufficient to support a claim upon which relief can be granted.'" Ibid. (quoting Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). A "with-prejudice" dismissal of a plaintiff's complaint will be reversed if it is "premature, overbroad, . . . [or] based on a mistaken application of the law." Flinn v. Amboy Nat'l Bank, 436 N.J. Super. 274, 287 (App. Div. 2014).

"This standard requires that 'the pleading be searched in depth and with liberality to determine whether a cause of action can be gleaned even from an obscure statement.'" Frederick, 416 N.J. Super. at 597 (quoting Seidenberg, 348 N.J. Super. at 250); see also Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). The inquiry is limited to examining the legal sufficiency of the facts alleged only on the face of the complaint; neither the trial nor appellate court is concerned with the weight, worth, nature, or extent of the evidence. Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).

A purely legal question, such as whether immunity applies, should be resolved at an early stage of the litigation. See Rivera v. Gerner, 89 N.J. 526, 536 (1982) (noting that resolving issues involving the New Jersey Torts Claims Act (TCA), N.J.S.A. 59:1-1 to :12-13, through the pretrial process "is to be

encouraged"); Hurwitz v. AHS Hosp. Corp., 438 N.J. Super. 269, 306 (App. Div. 2014) (observing the issue of statutory immunity should be adjudicated at an "early stage of litigation," and that an "unfettered right to discovery" would "dilut[e] the practical benefit of the immunity protection").

## II.

The NJCRA permits an individual to bring a civil action when their exercise of a constitutional right has "been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law . . . ." N.J.S.A. 10:6-2(c). The NJCRA was enacted as a state analog to 42 U.S.C. § 1983, Perez v. Zagami, LLC, 218 N.J. 202, 212 (2014), and as such, "the interpretation given to parallel provisions of [§] 1983 may provide guidance in construing our Civil Rights Act." Tumpson v. Farina, 218 N.J. 450, 474 (2014). "Given their similarity, our courts apply § 1983 immunity doctrines to claims arising under the [NJCRA]." Brown v. State, 442 N.J. Super. 406, 425 (App. Div. 2015), rev'd on other grounds, 230 N.J. 84 (2017); see also Gormley v. Wood-El, 218 N.J. 72, 113-16 (2014) (discussing the qualified immunity doctrine).

For these reasons, we reject plaintiff's contention the judge erred by citing § 1983 case law in dismissal of plaintiff's NJCRA claims. We likewise affirm

the judge's ruling defendants were immune from suit because they are not considered persons under the NJCRA. Indeed, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). This principle extends to "governmental entities that are considered 'arms of the [s]tate . . . .'" Id. at 70 (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)).

### III.

The negligence counts in plaintiff's complaint were rooted in a claim of negligent entrustment. This requires showing:

> (1) the entrustee was incompetent, unfit, inexperienced, or reckless;
>
> (2) the entrustor knew . . . , should have known, or had reason to know of the entrustee's condition or proclivities;
>
> (3) there was an entrustment of the dangerous instrumentality;
>
> (4) the entrustment created an appreciable risk of harm to others; and
>
> (5) the harm to the injury victim was "proximately" or "legally" caused by the negligence of the entrustor and the entrustee.
>
> [57A Am. Jur. 2d Negligence § 299 (2020).]

11

Plaintiff's complaint failed to plead sufficient facts showing defendants failed to act, breached a duty to act to safeguard Elias, or facts supporting proximate causation. The complaint lacks any factual assertion regarding who among defendants acted incompetently or recklessly, or who was unfit and inexperienced in handling Elias's situation, to enable us to glean a cause of action for negligent entrustment or negligent supervision. Indeed, the undisputed facts were that plaintiff was evaluated once he showed symptoms and hospitalized for care. When Elias fell ill, he was not eligible for furlough.

The United States Supreme Court has held a government entity "cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. For these reasons, applying this framework to the NJCRA, the respondeat superior claims set forth in plaintiff's complaint cannot survive dismissal.

IV.

Plaintiff concedes the complaint did not initially name Berno as the administrator ad prosequendum. However, plaintiff argues the judge should

12

have granted leave to amend the complaint, as required by the Wrongful Death Act, N.J.S.A. 2A:31-1.

Judge Vena dismissed the wrongful death counts, finding plaintiff lacked standing pursuant to N.J.S.A. 2A:31-2, which requires every wrongful death action where a decedent dies intestate be brought in the name of an administrator ad prosequendum. We discern no reversible error in this regard.

Nor did the judge err by denying plaintiff's motion to amend because defendants were immune from liability under the TCA. Aside from the general immunity from liability accorded a public entity and its employees under the TCA, N.J.S.A. 59:3-1(c), there are specific public health protections from liability. Indeed, "[n]either a public entity nor a public employee is liable for an injury resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community." N.J.S.A. 59:6-3.

Notwithstanding the immunity issues, the complaint here did not plead sufficient facts showing defendants provided inadequate medical care. "Providing adequate healthcare to inmates is a matter of federal constitutional compulsion." Scott-Neal ex rel. Scott v. N.J. State Dep't of Corr., 366 N.J. Super. 570, 576 (App. Div. 2004). The State can be liable for the medical

13

malpractice of a physician utilized by a prison to care for an incarcerated person. Id. at 576-78. A plaintiff must "show within a reasonable degree of medical certainty (1) that the defendants' negligence increased [plaintiff]'s risk of harm from the preexistent condition; and (2) that the increased risk of harm was a substantial factor in causing the complained-of injury." Id. at 576; see also Gardner v. Pawliw, 150 N.J. 359, 375-79 (1997); Scafidi v. Seiler, 119 N.J. 93, 108-09 (1990).

As we noted, the complaint failed to allege facts sufficient to glean a cause of action for negligence. It is undisputed that when Elias showed symptoms, he was evaluated by medical staff and promptly transferred to a public hospital the following day. The medical reports attached to plaintiff's complaint date from 2017 and 2018, predating the pandemic, and were provided for sentencing purposes. They do not establish that defendants' actions once Elias fell ill increased the risk of harm, let alone, were a substantial factor causing his death. Judge Vena correctly found the wrongful death claims lacked merit.

The Survival Act permits the recovery of all reasonable funeral and burial expenses and damages where "the wrongful act, neglect, or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived . . . ." N.J.S.A. 2A:15-3. Because there were no

14

grounds for a wrongful death claim, the survival claims could not withstand dismissal.

V.

Finally, we discern no reversible error in the dismissal of plaintiff's damages claims, including loss of consortium, funeral expenses, and punitive damages. As defendants note, these claims are not separate causes of action. See Tichenor v. Santillo, 218 N.J. Super. 165, 172 (App. Div. 1987); N.J.S.A. 2A:31-5 and N.J.S.A. 2A:15-3; Gautam v. De Luca, 215 N.J. Super. 388, 396 (App. Div. 1987) for the proposition. Moreover, a claim for punitive or exemplary damages does not lie against a public entity. N.J.S.A. 59:9-2(c). This limitation specifically applies to common law negligence claims, such as the claims asserted here. Scott-Neal ex rel. Scott, 366 N.J. Super. at 577.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1738-21